## UNION TRACTION COMPANY OF INDIANA *v.* VANDERCOOK.

[No. 4,646.   Filed January 15, 1904.   Rehearing denied March 30, 1904.]

NEGLIGENCE.—*Contributory, When Does Not Defeat Action.*—Only such negligence on the part of the plaintiff as materially contributes to the accident will defeat him in his action to recover damages. *p. 624.*

TRIAL.—*Interrogatories to Jury.—Rules Concerning.—Presumptions Concerning.—Antagonistic Answers.*—A general verdict for the plaintiff determines all material issues in his favor. All reasonable presumptions are indulged in favor of the general verdict, and none in favor of the answers to the interrogatories. The answers, to control the general verdict, must be in irreconcilable conflict with it. If the answers are antagonistic or inconsistent, they neutralize each other, and must be disregarded. The answers can override the general verdict only when both can not stand, and the conflict between them must be such that it is beyond the possibility of being removed by any evidence admissible under the issues. *pp. 625, 626.*

STREET RAILROADS.—*Crossing Track.—Looking and Listening.—Stopping.*—A person approaching a street railway crossing must use the caution of an ordinarily prudent person. He must look and listen before attempting to cross, but whether he must stop depends upon the circumstances of each particular case. *p. 626.*

SAME.—*Failure to Give Signals, Effect on Plaintiff's Conduct.—Right of Jury to Consider.*—The failure of those in charge of a street car to give the required signals when approaching a crossing will not excuse a person crossing the track at that point from the exercise of due care, but the jury may consider that fact, in connection with all the circumstances attending the accident, in passing upon the conduct of the person injured. *pp. 626, 627.*

SAME.—*Evidence of Speed at Same Point at Other Times.*—If there be conflict in the evidence concerning the rate of speed of a car at the point on the track where the accident occurred, evidence of the speed of the defendant's cars at the same place for several days immediately preceding the date of the accident is admissible. *p. 627.*

SAME.—*Interrogatories.—Looking and Listening Before Entering on Street Car Track.*—A special finding of a jury that the plaintiff, as he was approaching a street car track, and when within ten feet of such track, looked and listened in the direction of an approaching street car thereon, and neither saw nor heard it, but if he

had stopped at that point he would have both seen and heard it; and they further found that before his horse entered upon such track he could have neither seen nor heard the approaching car in time to have avoided the accident, is not in such conflict with a general verdict in favor of the plaintiff as to overthrow it. *p. 627.*

From Delaware Circuit Court; *J. G. Leffler,* Judge.

Action by Michael E. Vandercook against the Union Traction Company of Indiana. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. A. Van Osdol, W. A. Kittinger, A. W. Brady* and *Rollin Warner,* for appellant.

*James Bingham* and *Jesse Long,* for appellee.

Robinson, J.—Suit by appellee for personal injuries. The complaint, which was held sufficient against a demurrer for want of facts, avers, in substance, that an ordinance limited the speed of appellant's cars to ten miles an hour between street crossings, and to six miles an hour at crossings; that appellant's track crossed White river on a bridge parallel with, and immediately north of, High street wagon bridge; that at a point about sixty-eight feet southeast of the south end of these bridges appellant maintained a public street crossing across its tracks, leading from High street, a principal street; that on account of the close proximity of the two bridges, and the manner of their construction, a person traveling northwest on High street could not see an approaching car for more than one hundred and fifty feet northwest of the bridge, and while it was crossing the bridge, and until it came within sixty feet of the southeast end; that appellee was unable to see the car until it reached a point sixty feet northwest of the south end of the bridge as he entered upon the crossing, all of which appellant knew; that appellant at all times, except when appellee was injured, sounded the gong upon approaching the crossing, which appellee knew; that appellee, seated in a rubber-tired, open, single road wagon, with due care and caution, looked and listened for cars before

going upon the crossing; that no car could be seen or heard by appellee, though he could see a distance of 128 feet up the track; that at that time there was no car within 250 feet of the crossing; that the car had approached sufficiently near to be obscured by the bridge when appellee entered upon the crossing; that because of the wind appellee was unable to hear the approach of the car when more than one hundred and fifty feet from the crossing; that, while looking and listening, appellee started across the crossing, when appellant, by its servants, negligently and wrongfully, without sounding the gong or giving any signal or warning, ran the car at a speed of forty miles an hour at and against appellee, whereby he was injured; that after he saw the car he unsuccessfully tried to avoid being struck; that appellant's motorman in charge of the car saw appellee's horse upon the crossing when the car was over two hundred feet away; that the car was more than two hundred and fifty feet away when appellee first drove his horse upon the crossing; that the car could have been stopped within a distance of seventy-five feet at any time after appellee's horse entered upon the track at the crossing; that appellee's injury was the result of appellant's negligence in running the car at the unlawful rate of speed, not keeping the same under proper control, and in not stopping the same before reaching the crossing, all without appellee's fault or negligence.

We do not think the complaint open to the objection that the particular averments of what appellee did, show his own negligence contributed to his injury. It is averred that he looked and listened as he approached the crossing, and that as he started to cross there was no car within two hundred and fifty feet of the crossing. He did not know that a car was approaching. No gong was sounded or warning given. Under the circumstances existing at the time, he had the right to assume that he could safely pass over the crossing. But it can not be said, as matter of law, under the circumstances surrounding appellee at the time, that

he was negligent in attempting to cross over the crossing. In determining his conduct at the time, he could not be held to presume that if a car did approach the crossing, it would be running at a high and dangerous rate of speed. From the averments it appears that there was no car near when appellee started over the crossing. It is averred that the motorman saw appellee's horse upon the crossing when the car was two hundred feet away, and that the car could have been stopped within a distance of seventy-five feet at any time after the horse entered upon the crossing. Under such circumstances, it was the motorman's duty to stop the car, if necessary to prevent an accident. It is not every act of negligence on the part of a person injured that will defeat a recovery, but only such negligence as materially contributes to the accident. *Citizens St. R. Co.* v. *Abright,* 14 Ind. App. 433. The complaint states a cause of action.

The jury answered interrogatories that the accident happened at a public crossing which all cars approached from the northwest, running every twenty minutes, which appellee knew; appellee drove northwest at seven or eight miles an hour until he turned to cross the tracks, when he was going five or six miles an hour. The car which struck appellee was about one hundred feet from the southeast end of the bridge when appellee started to turn his horse to cross the tracks. The crossing was sixty-seven feet from the southeast end of the bridge. After appellee turned his horse to cross the tracks, and before the horse entered upon the crossing, appellee looked and listened for a car, but did not stop his horse; the cars stopped regularly at the crossing to take on and discharge passengers. Appellee knew that the sides of the two bridges obscured, to some extent, the view of a car aproaching from the northwest. He did not know the rate of speed at which cars approached and ran over the crossing. "(75) If plaintiff had stopped and looked to the northwest, along said railroad, at any time after he began to turn his horse to the right, and before his

Union Traction Co. *v.* Vandercook.

horse entered upon said railroad track, could he have seen the approaching car in time to have avoided the injury? A. Yes; if he had stopped." "(77) If plaintiff had stopped and listened for an approaching car at any time on said occasion when within ten feet of the point where he began to turn to go over said crossing, and before his horse entered upon the same, could he have heard said car in time to have avoided the injury? A. Yes; if he had stopped." We think it unnecessary to enter upon a discussion as to whether these answers show that appellant's failure to stop before reaching the crossing was a want of due care on his part, as the jury answered other interrogatories as follows: "(76) Did plaintiff on that occasion at any time after he turned to the right, and before his horse entered upon said crossing, stop and look to the northwest for an approaching car? A. He looked, but did not stop." "(66) If the plaintiff had looked on that occasion to the northwest at any time after he had turned his horse to the right, and before his horse entered upon the tracks of said street railway, could he have seen the approaching car in time to have avoided the injury? A. No. (67) If plaintiff had stopped his horse at any time on that occasion after he reached the point where he turned to the right to cross said tracks, and before his horse entered upon the same, could he, by either looking or listening, have learned that a car was approaching in time to have avoided the injury? A. No." Authorities need not be cited in support of the propositions that the general verdict determines all material issues in appellee's favor; that all reasonable presumptions will be indulged in favor of the general verdict, and none indulged in favor of the answers to the interrogatories; that if the answers are to control they must be in irreconcilable conflict with the general verdict; that if answers are antagonistic or inconsistent they neutralize each other, and will be disregarded; and that the answers override the general

verdict only when both can not stand, the conflict being such as to be beyond the possibility of being removed by any evidence admissible under the issues.

When appellee turned to go upon the crossing, the car was more than one hundred sixty feet away. He did not know a car was approaching at the rate of forty miles per hour. Had he seen the car when that distance away, and there was nothing to lead him to believe that it was running any faster than the ordinary rate of speed, his attempt to cross the track in front of the car would not have been, as matter of law, negligence. An attempt to cross in front of a street car running at an ordinary rate of speed, fifty feet distant, is not, as matter of law, negligence. *Wells* v. *Brooklyn City R. Co.*, 58 Hun 389, 12 N. Y. Supp. 67. Appellee had the right to cross the track, and his right was not inferior to appellant's right to pass over the crossing. Each was required to exercise his right so as not to interfere with the right of the other. *Citizens St. R. Co.* v. *Damm*, 25 Ind. App. 511. In *Cincinnati St. R. Co.* v. *Whitcomb*, 66 Fed. 915, 14 C. C. A. 183, it is held that it is not the law that persons crossing street railway tracks in a city are obliged to stop, as well as look and listen, before going over such tracks, unless there is some circumstance which would make that ordinarily prudent. See, also, *O'Neil* v. *Dry Dock, etc., R. Co.*, 129 N. Y. 125, 29 N. E. 84; *Evansville St. R. Co.* v. *Gentry*, 147 Ind. 408, 37 L. R. A. 378, 62 Am. St. 421.

The rule is well settled that a street railway crossing is a place of danger, and that a person approaching such a crossing is required to use the caution of an ordinarily prudent person. He must look and listen before attempting to cross, but whether he must stop must depend upon the circumstances of the particular case. See *Marchal* v. *Indianapolis St. R. Co.*, 28 Ind. App. 133, and cases there cited. While the failure of those in charge of the car to give the required signals would not excuse appellee from the exercise

of due care, yet the jury might consider that fact, in connection with all the circumstances attending the accident, in passing upon the conduct of appellee. *Louisville, etc., R. Co.* v. *Williams,* 20 Ind. App. 576. The jury found by the general verdict that appellee was in the exercise of due care, and the interrogatories can not be said to be inconsistent with that finding.

Witnesses were permitted to testify, over appellant's objection, as to the speed of appellant's cars at the place in question for ten days preceding the accident. The complaint averred that the car was running at the high and dangerous speed of forty miles an hour. The question before the jury was whether the speed of the car at the time and place of the accident was so great as to amount to negligence. There was some conflict as to the rate of speed of the particular car. Under such circumstances, it has been held in this State that the evidence above complained of is admissible. In *Chicago, etc., R. Co.* v. *Spilker,* 134 Ind. 380, the precise question here presented was determined adversely to appellant. In that case the court said at page 396: "We do not think this evidence prejudiced the case of appellant. The accident occurred on the 18th day of October. The question before the jury was whether the speed of the train on that day, at the time and place of the accident, was so great as to amount to negligence on the part of appellant. There was some variation in the evidence as to the exact rate of speed on that occasion. The evidence here objected to was by way of comparison, that by knowing how the vestibule train ran on other days about that time, particularly close before the day of the accident, the jury might have some aid in judging how fast the train did run on the day in question." The doctrine of the above case has not been overruled. It is applicable to the point in question, and is controlling here.

Judgment affirmed.