## INDIANAPOLIS STREET RAILWAY COMPANY *v.* O'DONNELL.

[No. 4,878.   Filed January 27, 1905.   Rehearing denied April 21, 1905.]

1. NEGLIGENCE.—*Contributory.*—*When Declared by Court.*—When the established facts show, without room for diverse inference, that the plaintiff did not have reasonable grounds for believing that he could cross a street railway track without injury, the court can declare his contributory negligence as a matter of law.   p. 316.

2. SAME.—*Contributory.*—*When Freedom From, Declared by Court.*— When the established facts show that there was no reasonable ground for the plaintiff to anticipate injury in crossing a street-railway track, his freedom from contributory negligence may be declared by the court.   p. 316.

3. SAME.—*Contributory.*—*When Question for Jury.*—When the evidence as to plaintiff's contributory negligence is conflicting and where different inferences can reasonably be drawn from the admitted or established facts, the question of plaintiff's contributory negligence is for the jury.   p. 316.

4. SAME.—*Contributory.*—*Recklessness.*—*Indifference.*—One who recklessly or indifferently casts himself into a place of known and immediate danger, is guilty of contributory negligence, and the courts can so declare.   p. 316.

5. HIGHWAYS.—*Use of.*—*Street Railroads.*—*Travelers.*—*Vehicles.*— Street railroad companies, drivers of vehicles, and pedestrians have equal rights upon a public highway, and they must use such highway with strict regard for the equal rights of one another.   p. 317.

6. SAME.—*Street Railroad Crossings.*—*Negligence.*—The driver of a vehicle may cross a street railroad track when it is reasonably apparent that he may without injury, and when such driver is on the track it is the duty of the motorman to check his car to avoid a collision, but such driver may not attempt to cross if it be reasonably apparent that an injury will occur.   p. 317.

7. COURTS.—*Duties of in Cases of Negligence.*—Since the facts of all negligence cases are to some extent different, the courts can only announce general rules to govern cases of similar character, and unanimity of result is not, therefore, attainable.   p. 318.

8. NEGLIGENCE.—*Contributory.*—*Street Railroad Crossing.*—In determining the contributory negligence of the driver of a vehicle in crossing the track of a street railroad there must be taken into account the distance of the car at the time of the attempt to cross, the rapidity of the movement of the car, any indications that the car would be

stopped, the apparent and actual control of the motorman and the increase of speed of the car after the attempt to cross. p. 318.

9. NEGLIGENCE.—*Contributory.*—*Seeing and Hearing Car.*—*Presumption.*—The presumption that the driver of a vehicle saw and heard a car which he·could have seen and heard is disputable, and in such case all the other circumstances must be considered in determining such driver's contributory negligence. p. 319.

10. · SAME.—*Anticipation of Defendant's.*—The plaintiff is not required to anticipate defendant's negligence, but may act on the presumption that defendant will exercise ordinary care. p. 320.

11. SAME. — *Contributory.* — *When Question for Jury.* — Ordinarily, contributory negligence, when it depends upon many elements and circumstances the weight of which depends upon their relation to each other, is a question for the jury. p. 320.

12. SAME.—*Contributory.*—*Evidence.*—Where the evidence shows that the plaintiff was driving a loaded wagon and attempted to cross the track of a street railway. when a car was approaching at from 70 to 150 feet distance; that plaintiff looked for a car, but saw none; that there was no obstruction to his view and that the car was running at from 15 to 20 miles an hour, the question of plaintiff's contributory negligence is for the jury. Wiley, J., and Comstock, C. J., dissenting. p. 321.

13. TRIAL.—*Instructions.*—*Invasion of Province of Jury.*—An instruction that the jury "should" take into consideration the time, location and conditions surrounding the accident, is not erroneous as an invasion of the province of the jury. p. 321.

14. SAME.—*Instructions.*—*Invasion of Province of Jury.*—An instruction that "a car may be run at a higher rate of speed in the suburbs or sparsely settled parts of a city than it may be in a thickly settled, populous or crowded portion thereof," is an invasion of the province of the jury. p. 322.

15. APPEAL AND ERROR.—*Right Result.*—*Harmless Error.*—Where the evidence and the answers to the interrogatories show that defendant was negligent, an erroneous instruction as to what constitutes negligence is harmless. Wiley, J., dissenting. p. 322.

16. NEGLIGENCE.—*Contributory.*—To permit a recovery, the plaintiff must show a case of unmixed negligence, and where the evidence on such question is conflicting, such question is for the jury. p. 329.

17. JURY.—*Qualifications as to Question to Be Tried.*—A jury of twelve men selected from the common, ordinary vocations of life are qualified to sit in judgment upon a question of ordinary care. p. 330.

18. SAME.—*Value of Trial By.*—Under the English and American system of jurisprudence the right of trial by jury is sacredly safeguarded as one of the inalienable and invaluable rights of the liberty of the citizen, and no undermining thereof nor encroachment thereon will be permitted by the courts. p. 330.

19. NEGLIGENCE.—*"Look and Listen" Rule.*—*Application.*—The failure of plaintiff to look and listen for an approaching car is not conclusive that he was guilty of contributory negligence, but is one of the facts to be considered in determining such question. p. 333.

20. SAME.—*Contributory.*—*Test.*—The test in determining whether A was guilty of contributory negligence as a matter of law in his action against B, is to conceive that B is suing A for damages on account of the same transaction, and if the court in such action could say that A was guilty of negligence as a matter of law, then the court is justified in the case at bar in saying as a matter of law that A was guilty of contributory negligence. p. 334.

From Superior Court of Marion County (64,138); *Vinson Carter,* Judge.

Action by James O'Donnell against the Indianapolis Street Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*F. Winter* and *W. H. Latta,* for appellant.
*William Irvin* and *O. U. Newman,* for appellee.

ROBY, J.—Appellee's complaint stated that on March 24, 1902, at about 11 o'clock a. m., he was driving a two-horse wagon eastward along the south side of Washington street in the city of Indianapolis, approaching Capitol avenue at the southeast corner of the statehouse; that, as he was driving across the railway tracks on Washington street in a careful and prudent manner, appellant caused one of its cars to be negligently run over said crossing at a dangerous rate of speed, to wit, twenty miles an hour, without signal, and negligently ran the same against his wagon, causing the injuries complained of. The issue was made by general denial. There was a trial by jury, and a verdict in favor of plaintiff for $700. The motion for a new trial was overruled, and there was judgment on the verdict.

The only assignment of error argued is that the court erred in overruling the motion for a new trial, and the question for decision is whether the evidence is sufficient to sustain the verdict.

The defendant introduced no evidence. The facts, so far as essential, are: That appellee was hauling sand with a wagon and team of horses at the time stated, and drove along the south side of Washington street eastward to the east side of Capitol avenue where it intersects said street, at which place he turned north, intending to go in that direction along Capitol avenue. There were double tracks along Washington street, west-bound cars using the north track and east-bound cars the south track. As he approached the south track, his horses' heads being a few feet distant therefrom, he stopped to avoid a street car going west on the north track. It having passed, he proceeded forward at about three miles an hour, and when the hind wheels of his wagon were between the rails of the south track it was struck by a car coming from the west at a rate of speed variously estimated at from fifteen to twenty miles an hour, by reason of which collision appellee was injured. He drove at least twenty feet after the west-bound car passed before the collision occurred. The evidence is that the car was distant from seventy to one hundred and fifty feet when he started to go across. In view of the difference between the speed of the car and the wagon, and the distance from which the wagon was driven, the jury could not do otherwise than to find, as the general verdict does, that, had the car been running at a safe rate of speed and properly controlled, there would have been no collision. Appellee testified that he glanced west as he started across, but noticed no car approaching. The track was straight and unobstructed. That appellant was guilty of actionable negligence as charged is not questioned. It is however contended that the undisputed facts show appellee to have been contributorily negligent, and that the court should have directed a verdict for appellant.

The disposition of the appeal, therefore, depends upon whether this court may hold as matter of law that appellee was guilty of contributory negligence.

One of the highest functions of an appellate court is to declare logical rules for the government of public conduct and for its own guidance. The following general propositions are believed to be logically accurate, and are supported by the vast consensus of judicial decisions:

1. When the established facts of a given case show, without room for diverse inference, that the plaintiff did not have reasonable ground for believing that he could cross without danger, then his contributory negligence may be declared by the court.

2. If the facts show that there was no reasonable ground upon which the plaintiff did anticipate, or should have anticipated, danger in attempting to cross, then his freedom from contributory negligence may be so declared.

3. In those cases where facts are disputed, or different inferences are deducible from undisputed·facts, the question of contributory negligence becomes one of mixed law and fact to be decided by the jury. *Pittsburgh, etc., R. Co.* v. *Bennett* (1894), 9 Ind. App. 92, 115; *Louisville, etc., R. Co.* v. *Williams* (1898), 20 Ind. App. 576; *Baltimore, etc., R. Co.* v. *Walborn* (1891), 127 Ind. 142, 148; *Railroad Co.* v. *Stout* (1873), 17 Wall. 657, 21 L. Ed. 745; *Washington, etc., R. Co.* v. *McDade* (1890), 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; *Keller* v. *Gaskill* (1894), 9 Ind. App. 670; *Cincinnati, etc., R. Co.* v. *Grames* (1893), 136 Ind. 39; 1 Thompson, Negligence (2d ed.), §§427, 429, 430.

4. If one deliberately or indifferently casts himself under the wheels of a street car, or those of any other vehicle, the lack of room for the inference of ordinary care upon his part enables the court to adjudge contributory negligence as a matter of law. Illustrative cases are: *Moran* v. *Leslie* (1904), 33 Ind. App. 80; *Citizens St. R. Co.* v. *Helvie* (1899), 22 Ind. App. 515; *Kessler* v. *Citizens St. R. Co.* (1898), 20 Ind. App. 427; *Young* v. *Citizens St. R. Co,* (1897), 148 Ind. 54.

The facts may also be of such a character that the court may adjudge absence of contributory negligence as matter of law. They are rarely called upon to do so. But if, when appellee started to cross the track, he had seen a street car half a mile away, which, contrary to any reasonable expectation, was brought in collision with him before he could clear the track, in the absence of further notice of the impending danger than the mere presence of the car at the distance named could give, it might be declared as a matter of law that he was not contributorily negligent.

The other class of cases are those in which there is a dispute as to what the facts are, or a dispute as to what inferences should be drawn from undisputed facts, in both of which cases, if there is room for a difference of opinion among reasonable men, the question is left to the jury, under instruction from the court as to the law. *Chicago, etc., R. Co.* v. *Martin* (1903), 31 Ind. App. 308, 315; *Citizens St. R. Co.* v. *Hamer* (1902), 29 Ind. App. 426, 430; *Baltimore, etc., R. Co.* v. *Walborn, supra; Railroad Co.* v. *Stout, supra.* It is primarily necessary in each instance to determine under which of the foregoing classes the given facts bring the case.

5. In the actual use of a public highway every person has an equal right to use it for his own best advantage, to suit his own convenience or pleasure, but at all times with a just regard to the like rights of every other person. *Stringer* v. *Frost* (1888), 116 Ind. 477, 2 L. R. A. 614, 9 Am. St. 875; *Green* v. *Eden* (1900), 24 Ind. App. 583; *Scofield* v. *Meyers* (1901), 27 Ind. App. 375.

6. "The driver of an ordinary vehicle can proceed at a highway crossing to go over a street railway in the face of an approaching car, when, and only when, he has reasonable ground for believing that he can pass in safety if both he and those in charge of the car act with reasonable regard to the rights of each other. The duty to slow up or stop, if necessary to prevent a collision, rests equally on each party.

Under ordinary circumstances, the first to reach the crossing, if each has been moving at a reasonable speed, has the right to proceed over it before the other; but if it be apparent to the driver that the motorman does not intend to respect this right, he must stop and give way, if a collision can thus be avoided." Baldwin, American Railroad Law, 418.

If the facts exhibited come short of what is required to enable the court to declare contributory negligence, it is the misfortune of the defendant, the defense being an affirmative one by statute. If the existence of certain facts is inconsistent with such declaration, their absence must appear from the evidence in order that it may be made.

7. There is constant difficulty in the application of the foregoing well-established general doctrine, due to the variety of facts connected with the different occurrences which come before the courts for examination. The main features of many accidents have a general likeness to each other, in that injuries are suffered through collision, but the details which give character to the conduct of the parties are not twice alike. Unanimity of decision is therefore attained when the same principles are applied in every case. Unanimity of result in upholding or overthrowing judgments rendered against street car companies for damages on account of such collisions is neither possible nor desirable. Each case must be determined upon its own facts. The language of different opinions can not be disassociated from the facts before, and considered by, the court. The textwriter above quoted says:

8. "In practical effect these doctrines give any railroad car approaching a highway crossing what amounts to a right of precedence. This follows from the rule respecting contributory negligence. No man has the right to calculate close chances as to his ability to reach the track before the car, and throw the risk of injury on the other party. As to whether the chances were close, however, and whether the railroad company were not the one really in fault, will or-

dinarily be a question for the jury. When a traveler is struck by a car, the collision may be due to a sudden increase of its rate of speed, which he had no reason to anticipate, or to his meeting with some unexpected and extraordinary impediment upon the crossing. All the attendant circumstances are to be taken into account." Baldwin, American Railroad Law, 418.

When the appellee started to drive across the tracks, the car which subsequently collided with his wagon was some distance away. What that distance was is one relevant fact. It may be of predominating importance, and it may be of very minor consequence. If the car had been stationary, its mere presence on the track would not be a menace. If its movement was such as to indicate an intention to stop, or so moderate as to suggest no likelihood of a collision, he could not, in proceeding upon his way, be held blamable because of its mere presence. So that the rate of speed at which a car moves, the measure of control apparently exercised over it, as well as that actually maintained, must always be taken into account in connection with the fact of its presence, and it is necessarily true that no court can set up a standard of distance, and say that one who attempts to cross a street car track when a car is within that distance is guilty of negligence. Much less can it be said that one who attempts to cross in front of an approaching street car, irrespective of distance, is guilty of negligence. It has been adjudged not to be negligence as a matter of law to drive upon the track in front of a car, moving at an ordinary rate of speed, 50 feet away (*Wells* v. *Brooklyn City R. Co.* [1890], 12 N. Y. Supp. 67); 160 feet away (*Union Traction Co.* v. *Vandercook* [1904], 32 Ind. App. 621); 125 to 150 feet away (*Citizens St. R. Co.* v. *Damm* [1900], 25 Ind. App. 511).

9. Where there is nothing to prevent a traveler from seeing an approaching car, it must be presumed that he did see it, or that he did not look. Whether his action, in view

of what he saw, was negligent, and whether he was negligent in not looking, must depend upon all the attendant relevant circumstances, part of which are found in the necessity of his position.

The driver of a vehicle has other duties than watching for street cars. He must keep a lookout to avoid being struck by other vehicles of other qualities and kind, and must, before all, be vigilant to avoid colliding with and inflicting injuries upon others.

When the evidence shows that he was in nowise constrained, knowledge of what he might have seen will be attributed to him, and knowledge or lack of knowledge as to the distance of the car, its condition as to being in motion or stationary, and, if in motion, its rate of speed, the apparent purpose of the motorman to check or increase speed, and many other facts are necessarily relevant and of differing importance.    *Union Traction Co.* v. *Vandercook, supra.*

10.    In determining the quality of the action taken by an individual in a certain juncture, his environment must be considered, and it is to be observed that the traveler is not required to anticipate negligence on the part of those in charge of an approaching car, but, on the contrary, he has the right to presume that reasonable care will be exercised by them.

11.    Ordinarily, contributory negligence, when its existence depends upon so many elements and circumstances, the weight of which depends upon their relation to each other, will be for the jury, whose judgment, as to what a reasonable man should do in view of the circumstances which can not be classified, it is the constant effort of the law to obtain.    When the conditions existing are such as can not be consistent with injury while the injured party is exercising ordinary care, the courts will not indulge the idle formality of submitting such issues to a jury, but will dispose of the issue in accordance with the rule heretofore stated.

12. The conditions and circumstances disclosed by the evidence heard in the case at bar were such as to create a mixed question of law and fact, which was correctly submitted to a jury under instruction from the court. *Baltimore, etc., R. Co.* v. *Walborn* (1891), 127 Ind. 142. If this conclusion is not correct, it would be of general interest to have an illustration of a case coming within that class, in which a street car collision is concerned.

13. The fourth instruction given was in terms as follows: "There is now no law or ordinance fixing the speed at which street cars may be run in the city of Indianapolis, but it is a question for the jury under the evidence in the cause to determine whether, at the time and place of the accident in controversy, the car was run at such a speed as to be unsafe and dangerous to persons or travelers on the street. The rate of speed at which a car may be safely run is not the same at all places or under all circumstances. A car may be run at a higher rate of speed in the suburbs or sparsely settled parts of a city than it may be in a thickly settled, populous or crowded portion thereof; and, in determining the question as to whether the car in controversy was run at a dangerous and unsafe rate of speed, you should take into consideration the time, location and conditions surrounding the accident. And if you believe that a reasonably careful and prudent motorman, under the conditions surrounding the accident in controversy, as shown by the evidence, would have run his car at the rate of speed at which this car was run at the time of the accident, then you would be warranted in finding that the defendant was not guilty of negligence in running said car at the speed at which it was run. But if you believe from the evidence that such motorman under such circumstances would not have run his car at such rate of speed, then you would be warranted in finding that the defendant was guilty of negligence in running the car."

The principal objection made to the instruction is that by

the use of the word "should" the court invaded the province of the jury. There are decisions of both this and the Supreme Court tending to support such contention, but such decisions, so far as their facts are similar to the facts in the case at bar, can not at this time be considered as expressive of the law. Of course, the court can not properly instruct the jury as to the weight of evidence, but evidence is admitted by the court for the purpose of being considered and weighed by the jury. "The instruction amounts to no more than a statement that it is the duty of the jury, in determining the weight to be given to the testimony of the witnesses to consider all the evidence bearing on that question." *Deal* v. *State* (1895), 140 Ind. 354, 364; *Anderson* v. *State* (1886), 104 Ind. 467, 472, and cases cited; *Smith* v. *State* (1895), 142 Ind. 288, 291; *White* v. *State* (1900), 153 Ind. Ind. 689, 691.

14. The statement in the instruction that "a car may be run at a higher rate of speed in the suburbs or sparsely settled parts of a city than it may be in a thickly settled, populous or crowded portion thereof," was the statement of a fact which it is the province of the jury to determine and which may not properly be stated by the court as a matter of law. The measure of care required is at all times the same, *i. e.,* ordinary and reasonable care. *Lake Shore, etc., R. Co.* v. *McIntosh* (1895), 140 Ind. 261, 270.

15. The body of the instruction contained a correct statement of the law, and the error is not a reversible one, for the reason that the evidence and answers to interrogatories returned with the general verdict show, without room for divers inference, as we are all agreed, that defendant was negligent in the operation of the car as charged in the complaint. *LaPlante* v. *State, ex rel.* (1899), 152 Ind. 80; Elliott, App. Proc., §642, p. 571.

Judgment is therefore affirmed.

Robinson, P. J., Myers and Black, JJ., concur.

Comstock, C. J., and Wiley, J., dissent.

## DISSENTING OPINION.

WILEY, J.—I am unable to agree with my associates in the conclusion reached in the prevailing opinion. My reasons for dissenting are two: (1) Because, from the undisputed facts disclosed by the record, it clearly appears that the appellee was guilty of contributory negligence, which should preclude his recovery; and (2) because of error of the trial court in giving instruction number four upon its own motion. I agree with the prevailing opinion in declaring that appellant was guilty of negligence, in that its servants in control of the car ran it at too rapid a speed, considering the location of the point where the collision occurred, and surrounding conditions. As I understand the rule applicable to the law of negligence, the negligence of which complaint is made, to create liability, must be unmixed from the negligence of the complaining party, where such negligence contributed to his own injury.

The facts exhibited by the evidence are fairly and fully stated in the opinion, and need not be restated at any length here. I do not find fault with the rules of law, so clearly and tersely stated, and forcibly supported by argument and reason, by my learned associate, who wrote the majority opinion, but, in my judgment, they are not applicable to the facts in this case.

Appellee was injured at the intersection of Washington street and Capitol avenue. Over and along Washington street appellant maintains two street car tracks, upon which it runs cars. Washington street runs east and west. Cars going east are run on the south track, and cars going west on the north track. Appellee was driving a team of horses hitched to a wagon. The wagon was heavily loaded with sand. He was going east on the south side of Washington street, intending to cross the tracks at Capitol avenue, and go north on that street. When he got to the point where he desired to cross he turned toward the tracks, and when

near the south track he stopped his team while a car passed west on the north track. Immediately after that car passed, he started to cross the tracks, and, before he had gone a distance of twenty feet, a car going east, on the south track, collided with his wagon. The rate of speed at which the car was going was stated by different witnesses to be from twelve to twenty-five miles per hour. In answer to an interrogatory, the jury found that it was going fifteen miles per hour.. When appellee started from the position of safety, which he occupied immediately before attempting to cross, the car that struck him was from fifty to one hundred twenty-five feet from the point of the collision. The shortest distance fixed by any witness was fifty feet, and the greatest one. hundred twenty-five feet.

Appellee testified that after he had driven "up to the south track" he glanced toward the west and saw, nothing. It further appears by the uncontradicted evidence of two of appellee's witnesses, that, just as he started to drive on the track, they knew he was running a great risk of colliding with the car. His load weighed 4,500 pounds, and he was going about three miles per hour. The track was straight for five squares, and there were no obstructions to obscure the view of the approaching car. The appellee himself said there were no other vehicles near him and nothing obstructed his movements. He said the street was clear as far as having a good view was concerned. It was a clear day. He said he glanced to the west once, and that was all, and he did not see or hear the car. He could have heard the car for half a block, or about two hundred feet. He knew cars frequently passed the point where he was injured.

It is clear from the uncontradicted facts that when appellee started to cross the tracks the car that struck his wagon was only a short distance away, and running at a rapid rate of speed. There was nothing to obstruct his view of it, and it was in plain sight. Under these facts it was hazardous for him to attempt to cross. The fact that he says he did

not see the car can not be used as a shield to protect him from his own carelessness, for there is no question but that he could have seen it if he had looked. His imperative duty bound him to see it.

A party asking another to respond in damages for an injury resulting from negligence can not close his eyes and ears, and rush into danger, and lay all the fault at the door of his adversary, and thus escape the consequences of his own negligent acts, when such acts contribute to his injury. The conduct of appellee shows a wanton indifference on his part to his own safety. As was said in *Robards* v. *Indianapolis St. R. Co.* (1904), 32 Ind. App. 297: "He needlessly exposed himself to danger he had good reason to believe was imminent. He used neither his sense of sight nor hearing, when the use of either would have enabled him to have avoided his injury. That this was negligence we need to cite no authorities. The general verdict finds he was free from contributory negligence. The facts show affirmatively that he did not exercise ordinary care."

As between travelers upon public streets and street railway companies operating street cars thereon, there are reciprocal duties and obligations. While they each have equal rights upon the streets, the traveler must sometimes yield to the right of the company, because the way of the latter is distinctly marked, and its cars can not vary from their course. The reciprocal duties just referred to are well defined by the authorities, and by them the question is put beyond the pale of legitimate debate or argument.

The obligation of a traveler upon a street, who is intending and is about to cross street railway tracks, has been clearly and forcibly stated by this court in the case of *Marchal* v. *Indianapolis St. R. Co.* (1901), 28 Ind. App. 133, as follows: "Street crossings of railways are places of danger. Every person must use due care before crossing them. Misconduct upon the part of the railway company will not excuse the performance of that duty upon the

part of the one injured. One is not in the exercise of due care who attempts to cross a railway track without taking reasonable precaution to assure himself, by actual observation, that there is no danger from an approaching car or trains." It is useless to multiply authorities in support of a rule of law so familiar. It is evident from all the facts in the case, and there is no conflict in the evidence, that appellee could have seen, if he had looked, and could have heard, if he had listened, the car that inflicted his injury. It was his duty both to see and hear the car, in the absence of anything which prevented the exercise of those senses. He voluntarily drove upon the track in front of the approaching car, and took no precaution for his safety.

He did not exercise ordinary care and prudence, but by his own act contributed to his injury. This is sufficient to prevent his recovery, and where there is no conflict in the evidence the court has a right to adjudge, as a matter of law, that he was negligent. Where the negligence of two persons is contemporaneous, and the fault of each operates directly to cause the injury, the rule deducible from the authorities is that the plaintiff can not recover if, by the exercise of ordinary care on his part, he might have avoided the injurious results of the defendant's negligence. *Evans* v. *Adams Express Co.* (1890), 122 Ind. 362; *Mayhew* v. *Burns* (1895), 103 Ind. 328; *Murphy* v. *Deane* (1869), 101 Mass. 455; *DeLon* v. *Kokomo City St. R. Co.* (1899), 22 Ind. App. 377.

It is the rule, supported by all the authorities, that, where negligence is the issue, it must be a question of unmixed negligence. If the want of ordinary care and prudence contributes to the injury, there can be no recovery. *DeLon* v. *Kokomo City St. R. Co., supra; Ft. Wayne, etc., R. Co.* v. *Gruff* (1892), 132 Ind. 13; *Louisville, etc., R. Co.* v. *Lockridge* (1884), 93 Ind. 191.

I affirm that the law declared in the authorities cited, when applied to the facts in this case, should prevent appel-

lee's recovery, on account of his failure to exercise ordinary care to prevent his injury.

The second reason why the judgment should be reversed is because of the error of the trial court in giving instruction number four. As this instruction is set out in the prevailing opinion, I need not repeat it here. In the instruction the court told the jury, among other things, that "The rate of speed at which a car may be safely run is not the same at all places or under all circumstances. A car may be run at a higher rate of speed in the suburbs or sparsely settled parts of a city than it may be in a thickly settled, populous or crowded portion thereof; and, in determining the question as to whether the car in controversy was run at a dangerous and unsafe rate of speed, you should take into consideration the time, location and conditions surrounding the accident." This was equivalent to telling the jury that the appellant was required to use greater care in running its cars in a populous city and upon crowded streets than in sparsely settled districts and upon streets where travel is light.

The evidence in this case shows that the accident occurred in the down-town or populous part of the city. In my judgment, the fact that the location of the accident was in the thickly settled portion of the city did not give the court the right to say as a matter of law that the rate of speed was or was not negligent. The evidence, without conflict, shows that at the time and place of the accident there were no other vehicles in close proximity to the intersection of the two streets, that there was no obstruction to the view, and that there were few travelers in that immediate vicinity. The mere question of location can not determine the rate of speed at which a street car may be properly run. The court told the jury by this instruction that they should consider the location, etc., and by so instructing the jury the court substantially said to them that they should find the defendant negligent if they found that it ran its car at the place of the

accident as fast as it ran it in the suburbs of the city or in sparsely settled districts. In the recent case of the *Indianapolis St. R. Co.* v. *Taylor* (1905), 164 Ind. 155, an instruction of similar import was under consideration. There the court told the jury that "A street railway company operating cars is required to use ordinary and reasonable care to avoid injuring persons who are using the highways upon which the cars are being operated. The degree of care and the means to be employed depend upon the conditions existing at the time and place in question." Immediately following the above quotation, and in the same instruction, the court told the jury: "Greater care is required in populous cities and crowded streets than in sparsely settled districts and streets or highways upon which there are few travelers." In passing upon the instruction the court said: "As a general rule, which is fully supported by the decisions of this jurisdiction, where it appears that the trial court in its charge to the jury has overstepped the line which separates the law from the facts, such instruction will constitute reversible error, unless it is affirmatively disclosed by the record that the error was harmless. While it is the province or right of the trial court to instruct the jury fully, freely and pointedly on all matters of law applicable to the case, still the court in doing so is not authorized to usurp or entrench upon the function of the jury in the determination of matters of fact. This rule is well affirmed by the following authorities, and many others." (Citing many cases.)

The court further said: "While, as a matter demonstrated by common experience, it may be true that greater care in the operation of street cars is necessary to avoid accidents in populous cities or crowded streets or highways than is necessary in 'sparsely settled districts or on streets or highways where there are few travelers,' nevertheless such a question, so far as it is involved in the case at bar, was a matter of fact to be decided by the jury, and not a matter of law to be announced by the court from the bench."

The giving of that instruction was held to be reversible error.

In *Goodwin* v. *State* (1884), 96 Ind. 550, the court said: "It is proper for the court to direct the minds of the jury to the facts of the case, but it is not proper for it to annex weight and value to them; that is the exclusive province of the jury."

Whether a street car may be run at a higher rate of speed in the suburbs and sparsely settled parts of a city than it may be in the thickly settled, populous or crowded portion thereof, is a question of fact within the exclusive province of the jury to determine. And when the court told the jury what it did in that part of the instruction above quoted, it thus invaded the province of the jury. In my judgment the giving of instruction number four was reversible error.

For the reasons herein stated, the judgment should be reversed.

COMSTOCK, C. J.—I concur in the dissenting opinion, on the ground that the evidence shows that appellee was guilty of contributory negligence.

## ON PETITION FOR REHEARING.

ROBY, J.—Appellant's learned counsel have filed a brief in support of the petition for rehearing, in which they state their position with earnestness and unusual candor. The legal propositions heretofore expressed are not controverted, but a line of argument is presented which is entitled to more than passing attention.

16. Negligence justifying the recovery of damages by one thereby injured must be unmixed negligence. No legal proposition is more firmly established, and nothing herein held or said in fact or effect questions or militates against the doctrine. The salient point of the decision is that the question whether or not the appellee was contributorily negligent was a mixed one of law and fact properly submitted to and tried by the jury.

17.    Against this conclusion counsel protest in terms as follows (including capitals): "The Courts are COMPE-TENT to establish adequate and consistent rules of conduct. Jurors are always selected for their monumental ignorance of the subject-matter of dispute. Who ever heard of book-keepers being called to try a bank case, insurance men to try an insurance case, any one who knows anything about railroading to try a railroad case? No One. In this case, as an example, the conduct of this motorman is submitted to men who have absolutely no conception of the duties, the responsibilities or the adversities of a motorman. Of course they condemn him, for the reason that nine out of ten juries set aside any will or contract submitted to them, because they think they can do the business better than the man that made it. The bar generally recognize that jury trials are farces, and they look to the courts to give them sane and reasonable rules of living—fixed rules—so that people may have some idea of their rights from cases previously decided, without having to go to law all the time and meet an ever-changing line of decisions." The standard by which the conduct of the appellee is to be measured is that of ordinary care—"that degree of care and foresight which a discreet and cautious individual would or ought to use if the whole loss and risk were to be his own exclusively." This is not a case of bookkeeping, insurance or railroading, but one as to the conduct of ordinary men, such men as jurors are presumed to be, and relative to which they are experts exactly as the argument indicates that they should be.

18.    The scope of the argument is broader, however, than the illustration. It amounts to an assault upon the system of trial by jury. Jurors are ignorant, trial by jury is a farce, *ergo* the courts should encroach upon the function heretofore assigned to them in American and English jurisprudence. Such encroachment was long since foreseen. "It is the most transcendent privilege which any subject

can enjoy or wish for, that he can not be affected either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbors and equals. A constitution that I may venture to affirm has, under Providence, secured the just liberties of this nation for a long succession of ages. And, therefore, a celebrated French writer, who concludes that because Rome, Sparta, and Carthage had lost their liberties, therefore those of England in time must perish, should have recollected that Rome, Sparta, and Carthage, at the time when their liberties were lost, were strangers to the trial by jury. Great as this eulogium may seem, it is no more than this admirable constitution, when traced to its principles, will be found in sober reason to deserve. The impartial administration of justice, which secures both our persons and our properties, is the great end of civil society. But if that be entirely entrusted to the magistracy, a select body of men, and those generally selected by the prince or such as enjoy the highest offices in the state, their decisions, in spite of their own natural integrity, will have frequently an involuntary bias toward those of their own rank and dignity; it is not to be expected from human nature that *the few* should be always attentive to the interests and good of *the many*. On the other hand, if the power of judicature were placed at random in the hands of the multitude, their decisions would be wild and capricious, and a new rule of action would be every day established in our courts. It is wisely, therefore, ordered that the principles and the axioms of law, which are general propositions, flowing from abstracted reason, and not accommodated to times and men, should be deposited in the breasts of the judges, to be occasionally applied to such facts as come properly ascertained before them. For here partiality can have little scope; the law is well known and is the same for all rights and degrees; it follows as a regular conclusion from the premises of fact pre-established. But in settling and adjusting a question of fact, when intrusted to any single

magistrate, partiality and injustice have an ample field to range in; *either by boldly asserting that to be proved which is not so, or by more artfully suppressing some circum-stances, stretching and warping others, and distinguishing away the remainder.* [Our italics.] Here, therefore, a competent number of sensible and upright jurymen, chosen by lot from among those of the middle rank, will be found the best investigators of truth, and the surest guardians of public justice. For the most powerful individual in the state will be cautious of committing any flagrant invasion of another's rights when he knows that the fact of his oppression must be examined and decided by twelve indifferent men, not appointed till the hour of trial; and that, when once the fact is ascertained, the law must of course redress it. This, therefore, preserves in the hands of the people that share which they ought to have in the administration of public justice, and prevents the encroachment of the more powerful and wealthy citizens. Every new tribunal, erected for the decision of facts, without the intervention of a jury, * * * *is a step toward establishing aristocracy, the most oppressive of absolute governments.* [Our italics.] The feudal system, which, for the sake of military subordination, pursued an aristocratical plan in all its arrangements of property, had been intolerable in times of peace, had it not been wisely counterpoised by that privilege, so universally diffused through every part of it, the trial by feudal peers. And in every country on the Continent, as the trial by peers has been gradually disused, so the nobles have increased in power, till the state has been torn to pieces by rival factions, and oligarchy, in effect, has been established, though under the shadow of regal government, unless where the miserable commons have taken shelter under absolute monarchy, as the lighter evil of the two. * * * It is, therefore, upon the whole, a duty which every man owes to his country, his friends, his posterity, and himself, to

maintain to the utmost of his power this valuable constitu-
tion in all its rights; to restore it to its ancient dignity, *if
at all impaired by the different value of property* [our
italics] or otherwise deviated from its first institution; to
amend it wherever it is defective; and, above all, to guard
with the most jealous circumspection against the introduc-
tion of new and arbitrary methods of trial, which, under
a variety of plausible pretenses, may in time imperceptibly
undermine this best preservative of English liberty." 3
Blackstone's Comm., chap. 23, *379.

The foundations of government may be undermined quite
as effectually through the assumption of arbitrary power by
existing tribunals as through the creation of new and inde-
pendent ones. The self-respecting independence of the in-
dividual citizen may be quite as well destroyed by the ag-
gressions of powerful combinations now as it could have
been by that of the nobility or aristocracy of earlier days.
American liberty is safer while the courts follow Blackstone
than it will be when they follow those who hold a different
point of view.

In *Moran* v. *Leslie* (1904), 33 Ind. App. 80, the injured
person was perfectly cognizant of the risk, took his chance,
and lost. The principle applicable to all cases, and here-
tofore stated, is that no man has the right to calculate close
chances as to his ability to reach the track before the car.
Whether the chance was close, viewing it as appellee did in
the light of conditions then known to him (the fact that a
collision did afterward occur not being one of them), was
a question of fact. What facts he knew and what facts he
ought to have known in view of the conditions and circum-
stances surrounding him were likewise questions for the
jury.

19. The true doctrine is stated by the supreme court of
Illinois in the following language: "We have for several
years denied the contention that the failure to look and

listen when approaching a railroad crossing was, as a matter of law, negligence, and have in recent years uniformly held that whether such failure was negligence was a question of fact, to be determined from all the facts and circumstances in the case. If, then, it was not negligence, as a matter of law, for the deceased to have changed his course at the street crossing and have turned out toward or upon the east track without looking and listening for a north-bound car, we are unable to say that, as a matter of law, the deceased was guilty of negligence in doing so when it appeared that the car was 200 feet away from him, approaching a street crossing, and in the absence of evidence that he had any knowledge that such car was approaching. Appellant puts the question thus: 'The sole question then arises, Was his conduct in turning to the left upon the track, where he might come face to face with an approaching car, contributory negligence?' and we answer: 'As a matter of law, no; as a matter of fact, it may have been.' But to say that in a city, at the crossings of streets, every person in a conveyance who may veer from his course is guilty of negligence or want of ordinary care because he may come face to face with an approaching car and may incur an injury, is to say that, as a matter of law, every person driving along a street must take one course and not deviate from it, at the risk of receiving injury for which he shall have no compensation under any circumstances." *Chicago City R. Co.* v. *O'Donnell* (1904), 208 Ill. 267, 70 N. E. 294, 2 St. R. Rep. 170; *Chicago City R. Co.* v. *O'Donnell* (1904), 207 Ill. 478, 69 N. E. 882.

20.  If the street car company was suing the owner of the wagon for damages caused to its car by the collision, could the court say, as matter of law, that the teamster was guilty of actionable negligence in attempting to cross the street because a car was within 50 to 150 feet? Certainly not. The utmost that could be said would be that the ques-

tion is a debatable one, and, being open to debate, it goes to the jury.

Petition overruled.

Robinson, P. J., Myers and Black, JJ., concur. Comstock, C. J., and Wiley, J., dissent.