## LINDLEY *v.* KEMP ET AL.

[No. 5,457. Filed December 15, 1905. Rehearing denied April 27, 1906. Transfer denied June 21, 1906.]

1. APPEAL AND ERROR.—*Record.—Motion to Strike Out Sustained.—Statutes.—*A motion to strike out parts of a complaint, which fails to set out the parts to be eliminated, is not sufficient, under the act of 1903 (Acts 1903, p. 338, §2, §641b Burns 1905), and where the record shows such motion was sustained in part and overruled in part, but such motion is not brought into the record by a bill of exceptions, it cannot be considered. *Fairbank* v. *Lorig,* 4 Ind. App. 451; *DeKalb Nat. Bank* v. *Nicely,* 24 Ind. App. 147; *Union City, etc., Co.* v. *Jaqua,* 26 Ind. App. 160, overruled. p. 357.

2. SAME. — *Answers to Interrogatories to Jury. — Precipe. — Record.—*A precipe calling for "all entries of the trial in this cause" includes the answers to the interrogatories to the jury, such answers being a part of the record without a bill of exceptions. p. 358.

3. WORDS AND PHRASES.—*"Trial."—*The word "trial" includes all of the steps taken in a cause from submission to the jury to the rendition of judgment. p. 359.

4. APPEAL AND ERROR. — *Precipe.—"Special Verdict."—Answers to Interrogatories to Jury.—*A precipe calling for the "special verdict" is sufficient to include the answers to the interrogatories to the jury, a liberal construction being given in such matters. p. 359.

5.  TRIAL.—*Verdict.—General.—When Controlled by Answers to Interrogatories to Jury.*—The general verdict is controlled by the answers to the interrogatories to the jury only when in irreconcilable conflict therewith.   p. 366.

6.  SAME.—*Verdict.—General.—Special.—Irreconcilable.—Test.—* If, considering the pleadings, facts could have been proved which would support the general verdict regardless of the answers to the interrogatories to the jury, the general verdict controls.   p. 368.

7.  PLEADING. — *Complaint. — Damages. — Misrepresentations of Law and Fact.*—A complaint for damages for misrepresentations of matters of law and fact is good if it contains enough misrepresentations of facts to constitute a cause of action. p. 368.

8.  FRAUD. — *Deceit.—Conspiracy.*—Misrepresentations made to an old, helpless and infirm lady, incapable of attending to her business, by which the conspirators secured possession and legal title to her property, without her consent, constitute actionable fraud.   p. 368.

9.  TRIAL.—*Limitation of Actions.—General Verdict.—Special.—* A general verdict for plaintiff is a finding against defendants upon their defense of the statute of limitations, and where the answers to the interrogatories to the jury do not show otherwise, such verdict is conclusive on appeal.   p. 369.

From Randolph Circuit Court; *Henry C. Fox,* Judge.

Action by Mary E. Lindley against Benjamin F. Kemp and others.   From a judgment for defendants, plaintiff appeals.   *Reversed in part.   Affirmed in part.*

*Nichols & Carter,* for appellant.

*Engle, Caldwell & Parry,* for appellees.

MYERS, J.—This is an action by appellant against appellees for damages.   A single paragraph of complaint answered by appellees Wooten and Wooten (1) in general denial; (2) setting up the statute of limitations, and like answers by appellee Kemp.   To appellees' special answer appellant replied (1) in general denial; (2) concealment of her cause of action.   The issues thus formed were tried by a jury, and interrogatories submitted to them were answered and returned, with a general verdict for appellant.

Judgment for appellees on the answers to the interrogatories notwithstanding the general verdict.

The only error assigned is based upon the ruling of the court in sustaining the separate and several motions of appellees for judgment *non obstante veredicto.*

I.   Appellees contend that this court ought not to consider any of the alleged reasons for a reversal of this cause, for the reason that it is impossible to tell from the record what were the issues before the trial court.

We take the following statement from the record: On October 30, 1901, the complaint was filed. On November 13, 1901, appellees filed a joint motion, and on March 14, 1902, appellee Kemp filed his separate motion, and Wooten and Wooten their joint motion, to strike out certain parts of the complaint. By reference to the motions copied in the record it will be seen that the words sought to be stricken out of the complaint are not set forth, but are indicated by references to pages and lines of the complaint. This is not a sufficient statement of the parts stricken out. Acts 1903, p. 338, §2, §641b Burns 1905. By an order-book entry copied in the record it appears that these motions were by the trial court sustained in part and overruled in part. It is true that this entry does not disclose what parts of the complaint are stricken out, but, even if it did, the ruling and motions are not in the record by a bill of exceptions or by an order of the court, and for that reason they cannot be considered as a part of the record for the purpose of showing that any such motions or rulings were made. *Crystal Ice Co.* v. *Morris* (1903), 160 Ind. 651; *Dudley* v. *Pigg* (1898), 149 Ind. 363. Therefore, under the rule imputing absolute verity to the record, this court must consider the complaint as found in the record. The cases of *Fairbank* v. *Lorig* (1892), 4 Ind. App. 451, *DeKalb Nat. Bank* v. *Nicely* (1900), 24 Ind. App. 147, and *Union City, etc., Co.* v. *Jaqua* (1901), 26 Ind.

App. 160, upon this particular point are, by *Crystal Ice Co.* v. *Morris, supra,* overruled.

II.   Appellees also insist that the precipe does not direct that the interrogatories submitted to the jury and their answers thereto be made a part of the transcript, and, although copied into the record, the clerk's certificate does not show such interrogatories to be the ones submitted to the jury, or that they had been correctly copied, and for these reasons no question is presented for our consideration.   We think these objections too technical, and ought not to prevent the consideration of this cause upon its merits.   That part of the precipe referred to by appellees reads as follows: "All entries of the trial in this cause, the verdict of the jury, both special and general, defendants' motion for judgment on answers to interrogatories notwithstanding the general verdict, and the ruling and judgment thereon."   The clerk's certificate in this particular is identical with that of the precipe.   It will be noticed that the error based on the ruling of the court is properly assigned.

The General Assembly of this State in 1897 amended our laws concerning civil procedure with reference to forms of verdicts found by juries, and by section one (Acts 1897, p. 128, §555 Burns 1901) provided "that in all actions hereafter tried by a jury, the jury shall render a general verdict, but in all cases when requested by either party, the court shall instruct them when they render a general verdict to find specially upon particular questions of fact to be stated to them in writing in the form of interrogatories on any or all the issues in the cause, and this shall be the only form of verdict submitted to or rendered by the jury in the cause: Provided, the provisions in this section shall not apply to cases in equity.   These interrogatories are to be recorded with the verdict."

The jury returned a general verdict.   They found upon particular questions of fact, submitted to them in the form

of interrogatories. These interrogatories were submitted and recorded with the general verdict. They appear as a part of the proceedings of this cause, and as a part of the same order-book entry in which the verdict of the jury is recorded. That part of the order-book entry referring to the interrogatories reads as follows: "The jury also returned the interrogatories submitted to them by the court, together with their answers thereto, which interrogatories and answers are in these words, towit." Then follows a copy of the interrogatories and answers, each signed by the foreman of the jury. They are a part of the record, without a bill of exceptions or an order of the court. They are included by the request for "all entries of the trial in this cause." For, by general acceptation or use,

3. the word "trial" includes "all the steps taken in the case from submission to the jury to the rendition of judgment." Anderson's Law Dict., 1054. See, also, *Bruce* v. *State* (1882), 87 Ind. 450, 453; *Jenks* v. *State* (1872), 39 Ind. 1, 9.

It is apparent that the words "special verdict," as used in the precipe and in the clerk's certificate to the transcript,

4. had reference to the interrogatories and the answers thereto, and we cannot disregard them because of a misnomer, or because their treatment by the parties would seem to assign to them an effect not now authorized by our code of civil procedure. See *Louisville, etc., R. Co.* v. *Balch* (1886), 105 Ind. 93, 97.

In *Powell* v. *Bunger* (1883), 91 Ind. 64, 72, the court in speaking of a precipe recognized a liberal rule of construction by saying: "This court will not be prevented by informality or omission in appellants' written directions for a transcript, from looking into any portion of the record before it, as may become necessary to a proper decision of the cause." See, also, Elliott, App. Proc., §§200, 201.

III. In passing upon the real question here presented, we are confronted with a complaint containing many al-

leged fraudulent representations, and abounding with alle-
gations of tortuous acts, many of which within themselves
would support an action for damages; but, upon the theory
of fraud as a basis of recovery, a reasonably full statement
of the facts appearing in the complaint will not be out of
place, because, as said by Chancellor Kent (2 Kent's Comm.,
*484) : "A deduction of fraud may be made, not only from
deceptive assertions and false representations, but from
facts, incidents, and circumstances which may be trivial in
themselves, but decisive evidence in the given case of a
fraudulent design." From the complaint it appears that
on April 1, 1890, appellant was the owner of a life estate
in certain described real estate in Randolph county, Indi-
ana, containing eighty acres. Four of her children, includ-
ing Emma L. Dougherty and appellee Susie A. Wooten,
were the owners of the land in fee. Another of her chil-
dren, Zenas C. Lindley, a minor, was the owner of a forty-
acre tract in the same county. Appellant had the manage-
ment of her son's real estate, and was in possession of both
tracts. On said day of April, and for a long time prior
thereto and thereafter, appellees conspired and confeder-
ated together to cheat and defraud appellant and her chil-
dren, except appellee Susie A. Wooten, out of their real
estate by falsely and fraudulently pretending and repre-
senting to appellant and Emma L. Dougherty that appellant
did not have to pay any taxes on the real estate, that she
was a widow and her son an orphan, and by reason thereof
the lands could not be taken from them for taxes, and that
neither should pay any attention to the payment of taxes
or to any notice for the payment thereof. During the time
of the making of said false and fraudulent representations
appellees Wooten and Wooten lived with appellant on the
real estate, and took possession of and appropriated to their
own use all of the proceeds arising therefrom, with the
knowledge and connivance of appellee Kemp, for the pur-
pose of depriving appellant of any means with which to pay

her taxes. Appellant was at the time an old woman, a widow, infirm by reason of her age and ill health, inexperienced in business affairs, ignorant of the law concerning such matters, and, by reason of her age, infirmity, inexperience, and ignorance of the law, was incapable of attending to her affairs. Appellees herein well knew of the helpless condition of appellant. Appellee Kemp is appellant's brother, a minister of the gospel, and a successful business man, who had at said time accumulated a large estate, and by reason of his relationship, his great profession as a Christian, his successful business management and career, she (appellant) and said Emma L. had great faith and confidence in him, and relied upon him generally for counsel, and especially relied upon him as to his false and fraudulent representations concerning her taxes, and by reason of such reliance failed to give any attention to her taxes. All of her said children were unable to pay said taxes, except Emma L., who was able to pay the same, and would have done so, had it not been for the aforesaid fraudulent representations. The taxes were not paid, and on February 9, 1891, the land was sold for taxes to William A. Edgar, who on December 10, 1891, sold and transferred the tax certificate to Wilder G. Parent, and on February 11, 1893, appellant and said Emma L., still relying upon the representations made to them by appellees, Kemp, Wooten and Wooten, failed to redeem said lands, and the auditor of said county executed to Parent a tax deed for the lands, who, on January 1, 1894, sold and conveyed the same by quitclaim deed to John W. Macy. In an action by Macy against appellant and her children in the Randolph Circuit Court, on May 12, 1894, the tax deed was adjudged ineffectual to convey title, a lien given Macy for the taxes so paid, a decree of foreclosure entered, and at the former's office an agreement was entered into by which Macy was to convey the real estate to plaintiff upon her executing to him a mortgage on the land for $500. As a

part of the agreement Macy was to and did prepare a mortgage and note, and by mail sent them to her at Jordan post-office, that being her post-office address. Appellees Wooten and Wooten, knowing of said agreement, for the purpose of cheating and defrauding her, took said mortgage and note from said post-office and never delivered them to her, but, on the contrary, secreted the same, thereby preventing the execution thereof according to said agreement, and thereby keeping from her all knowledge of their preparation until long after the execution of the deed to appellees, and until after said Wooten and Wooten had vacated the dwelling-house, and the note and mortgage were found among papers there left by them. On September 8, 1894, pursuant to the aforesaid decree, the sheriff of said county, after due notice, sold to Macy the eighty-acre tract for $354.57, and the forty-acre tract for $99.65. On October 7, 1895, appellee Kemp represented to Macy that appellant was incapable of caring for herself and those depending upon her for support, and that he (Kemp) was her brother and desired to care for her, and for that purpose desired Macy to convey the real estate to him, and, if he would do so, he (Kemp) would hold it for appellant and care for her, and see that she did not suffer, and Macy, under the belief that appellant had refused to execute the mortgage and note, and not knowing that the same had been concealed from appellant, and desiring that the land should be held for the use and benefit of appellant, and intending to claim no interest therein except the amount by him invested, interest thereon and reasonable compensation for the expense and trouble the same had caused him, but relying upon the representations of Kemp so made to him in regard to his sister, for the nominal consideration of $900, conveyed said lands to Kemp, reserving for appellant the house, garden, truck patch and a certain field, as then situated, October 7, 1895, so long as appellant should use and occupy the same. The eighty-acre tract was of the value

of $4,000, and the forty-acre tract of the value of $2,000.
Appellee Kemp at the time of making the representations
to Macy had no intention of holding the lands for the use
of appellant or for caring for her, and he has not so held said
lands nor in any way cared for her, but permitted her to
suffer for want of food, clothing, fuel and the necessities
of life, and for which she has been compelled to work and
labor for hire for those who would employ her, and to ac-
cept assistance from the overseer of the poor. The prom-
ises so made to Macy were false and fraudulent, and made
in pursuance of the conspiracy to cheat and defraud the
appellant out of her said lands. Had said Macy known that
said representations were false and fraudulent, and that
the mortgage and note had been withheld and concealed
from appellant, he would not have conveyed the lands to
Kemp, but would have conveyed the same to appellant ac-
cording to the agreement and arrangement with her as
aforesaid. On October 31, 1895, Kemp conveyed the
eighty-acre tract to Wooten and Wooten for the considera-
tion of $690. The life estate in the real estate so conveyed
was of the value of $3,000. Appellant had no knowledge
of the fraudulent purpose of appellees until the discovery
of the mortgage and note in the papers of Wooten and
Wooten. Had she known of the preparation of the note
and mortgage she would have executed it long before the
execution of the deed to Kemp, and would have received
the conveyance to herself as agreed by and with Macy.
For the purpose of obtaining possession of that part of the
eighty-acre tract reserved to appellant by Macy in his deed
to Kemp of October 7, 1895, and in pursuance of their
purpose to cheat and defraud appellant, and with the ad-
vice, knowledge and consent of Kemp, Wooten and Wooten
maliciously and unlawfully and with force entered upon
the reserved portion of said lands, tore down and removed
buildings of the value of $100, removed fences of the value
of $100, allowed their cattle and hogs to run at will upon

the lands of appellant, destroyed her crops for the past six years, to her damage in the sum of $500, took possession of and rendered her barn unfit for use, to her damage in the sum of $100, took the pump, of the value of $10, from her well, and used appellant's well to water their stock by taking water therefrom with a slop-bucket, rendering the water in the well unfit for domestic use, and by force took possession of her corn-crib, kept hogs which ate her chickens, carried away her oats and other grains, took the fodder kept by her to feed her horses, turned her cows into the highway, made a hog-pen of her dooryard, thereby creating a stench, to her discomfort and annoyance, rendering her dwelling unfit for occupation. By the terms of the reservation in said deed of Macy to Kemp, all rights thereunder in favor of appellant would be null and void whenever appellant should cease to use and occupy the same as a home and residence, and the use of the lands so reserved would fully vest in appellees Wooten and Wooten, all of which was well known to appellees, and by reason of the foregoing she demands damages, etc.

The record contains a copy of all of the other pleadings in the cause, and we have heretofore indicated the issue they tender. The jury, in answer to interrogatories, found that on April 1, 1890, appellant was the owner of a life estate in eighty acres of land in Randolph county, Indiana, and that four of her children, including the appellee Susie A. Wooten, were the owners of the fee. Appellant was, until February 9, 1891, the owner of the rents and profits of a certain forty-acre tract of land, described in the complaint. Appellant was then, and had been since 1879, a widow. All of the real estate described in the complaint was sold by the treasurer of Randolph county in February, 1891, for the nonpayment of taxes for the years 1890 and 1891, to William A. Edgar, who on December 10, 1891, sold and assigned his said tax certificate to Wilder G. Parent, who on February 11, 1893, surrendered his tax-sale

certificate to the auditor of said county, and received a tax deed for all of said real estate. On January 1, 1894, said Parent conveyed said real estate by quitclaim deed to John W. Macy, and on May 12, 1894, in a proceeding brought in the Randolph Circuit Court by Macy against appellant and others said tax deed was declared ineffectual to convey title, and a lien for the amount of taxes, etc., declared on said real estate, and the same was ordered sold to pay such lien. On September 8, 1894, by virtue of a decree issued on said judgment, the land was sold to John W. Macy, who paid for the eighty-acre tract $354.57, and for the forty-acre tract $99.65, and on the same day received a deed from the sheriff for all of said real estate. Macy prior to that time had no interest in the land except his lien for taxes. Between the years 1881 and 1890 appellant paid the taxes on all said real estate, and knew at the time she was paying the same that it was subject to taxation. On August 16, 1894, there was an agreement between Macy and appellant whereby Macy agreed that he would convey all of the real estate described in the complaint, upon the condition that appellant and certain of her children would execute to him a mortgage on said real estate for $500 in full of Macy's lien on the premises, and compensation for his trouble and expense in perfecting his lien. This agreement was oral, and at the time of making it appellant knew that Macy's lien on the land grew out of the nonpayment of taxes thereon, and that he at no time made any other agreement with appellant in relation to this land, and had no other interest in the same except as above stated, and no other title except that received from the sheriff on said September 8. This action was begun October 30, 1901. Appellee Susie A. Wooten is the daughter of appellant, and at no time conspired and confederated with appellees William Wooten and Benjamin F. Kemp, or either of them, to defraud appellant out of her interest in the land described in the complaint, or any part thereof, nor was she at any time

a party to a conspiracy for that purpose, nor did she at any time make any statements or representations to the appellant for that purpose, nor did she at any time do any act or perform any deed, nor did she at any time counsel, advise or assist any person or persons in the making of any fraudulent statements or representations to appellant for that purpose. Said Macy on October 7, 1895, conveyed to appellant a tract of three or four acres out of the eighty-acre tract in the complaint described, and on the same ·day conveyed all the remainder of said lands to appellee Kemp, and thereafter had no further interest therein. Kemp on October 31, 1895, conveyed the land so received by him from Macy to appellees William Wooten and Susie A. Wooten, and after October 7, 1895, neither of the appellees made any representation to appellant relative to the non-payment of taxes or as to her duty to pay the taxes. After October 7, 1895, appellees Kemp and William Wooten concealed from appellant her cause of action set up in the complaint by Kemp's deeding the land to the Wootens without appellant's knowledge.

The general verdict was in favor of appellant, and was therefore a finding in her favor upon every issuable fact presented by the record, and is entitled to every reasonable presumption in favor of its support, and will not be overthrown by special findings, unless upon the face of the record it appears that they are so antagonistic that both cannot stand. This familiar rule does not require the citation of authority to support it, and, when applied to the case at bar, warrants the conclusion that as to the appellee Susie A. Wooten there can be no recovery, for the reason that the facts specially found absolutely absolved her from the charges made in the complaint, and are therefore antagonistic to the general verdict from every standpoint on which a recovery could be had under the issues. As to appellees William Wooten and Benjamin F. Kemp there is no such antagonism.

The findings are silent as to the representations of Kemp, and the purposes for which made; as to his being appellant's adviser and counselor, and the peculiar trust and confidence imposed in him; his kinship and profession; his advice to his niece not to pay the taxes; the appropriation of the crops and proceeds of the lands by Wooten, with the connivance of Kemp, for the purpose of preventing the payment of taxes by appellant; the circumstances and manner of securing title to the lands, and his absolute indifference to the wants and suffering of his sister after she had lost the land through his advice; as to the inference to be drawn by the division of the land between the Wootens and himself, two-thirds and one-third respectively, and the inferences to be drawn from the cost of each, viz., $690 and $210 respectively, of lands worth $4,000 and $2,000, tending to show a concert of action and the fact of a conspiracy as charged; as to the taking of the mortgage and note from the post-office, and their concealment by Wooten; as to the acts of trespass charged in the complaint as committed for the purpose of ousting her from the possession of the land reserved to her in the Macy deed, in pursuance of and as a part of the conspiracy, and the damages thereby to appellant; as to appellees' knowledge that appellant was an old woman, a widow, infirm by reason of her age and ill health, inexperienced in business affairs, ignorant of the law concerning her rights, incapable of attending to her affairs, and in a helpless condition; as to the date when appellant found the mortgage and note as fixing the time of the discovery of the fraud charged. While some of the matters last above referred to, and upon which there are no findings, may seem trivial, yet they are all charged in the complaint, they were before the jury, and they are before us.

The question of the sufficiency of the pleadings is not presented, but, for the purpose of the particular question

now under review, they are to be considered as pre-
6.   senting the issues tried by the jury, and the jury's
     conclusion thereon is expressed by their general
verdict, presumably supported by evidence legitimately
admissible under such issues. *Chicago, etc., R. Co.* v.
*Leachman* (1903), 161 Ind. 512; *McCoy* v. *Kokomo R.,
etc., Co.* (1902), 158 Ind. 662; *Shoner* v. *Pennsylvania
Co.* (1892), 130 Ind. 170; *Louisville, etc., R. Co.* v.
*Creek* (1892), 130 Ind. 139, 14 L. R. A. 733; *Union Trac-
tion Co.* v. *Barnett* (1903), 31 Ind. App. 467; *Union
Traction Co.* v. *Vandercook* (1904), 32 Ind. App. 621.
Therefore, if, by adding to the special findings facts which
might have been proved under the issues, irreconcilable
conflict is avoided between such special facts and the gen-
eral verdict, it follows that the court below erred in sus-
taining the motion as to William Wooten and Kemp.
*Indiana Pipe Line, etc., Co.* v. *Neusbaum* (1899), 21 Ind.
App. 361.

But conceding to appellees that all representations made
by Kemp in regard to taxes were not as to matters of fact,
     but as to questions of law, for which an action at
7.   law will not lie, and that these allegations should
     be eliminated, still there remains in the complaint
allegations of facts sufficient, if proved, and not contra-
dicted by the answers to interrogatories, to avoid the con-
flict and uphold the general verdict.

In our opinion, where an old lady, shown to be infirm,
helpless and incapable of attending to her affairs, looks to
     her brother, a minister of the Gospel and a
8.   man of good business qualifications, successful
     in accumulating wealth, for counsel and ad-
vice, and he, knowing her condition, and for the
purpose of cheating and defrauding her, enters into
a conspiracy whereby, with his knowledge and con-
sent, her property is consumed and such party rendered
unable to pay her taxes, and by reason thereof she loses

her property, to the financial gain of such conspirators, and in continuation of such fraudulent purpose and during the existence of the trust and confidence, as here shown to exist, continued acts of trespass and damage are committed, as charged in the complaint, by one of the conspirators, and with the knowledge and consent of the other, then acting as her adviser, and for the purpose charged, actionable fraud is shown. Appellees also insist that the oral agreement between Macy and appellant, by which Macy was to transfer his tax lien to appellant, comes within the statute of frauds, and can serve no purpose in sustaining the judgment, for the reason that it was not enforceable against Macy; and, his grantee being a privy in estate, it cannot be enforced against him. This contention might be worthy of careful consideration if this were an action seeking to enforce an interest in the lands based upon such agreement, but as it is not, appellees' insistence is not well founded.

The date when appellant discovered the fraud in the complaint averred is not therein stated, but, as to appellees' answer tendering the issue of the statute of

9. limitations, the general verdict amounted to a finding in appellant's favor upon that issue, and as there are no special findings contradicting the presumption in favor of the general verdict, on this subject it must control.

Therefore, from the entire record in this case we conclude that the judgment should be and is affirmed as to Susie A. Wooten, and reversed as to William Wooten and Benjamin F. Kemp, with directions to the trial court to overrule their separate motions for judgment on the answers to the interrogatories, and render judgment against them on the general verdict.