## Bush *v.* State of Indiana.

[No. 23,221. Filed October 13, 1920.]

1. CRIMINAL LAW.—*Overruling Challenge for Cause.—Harmless Error.*—The overruling of a challenge of jurors for cause was harmless, in view of their subsequent removal by peremptory challenge. p. 471.
2. CRIMINAL LAW.—*Motion for New Trial.—Ruling.—Presumption.—Challenge of Jurors.*—Where the record shows that the appellant assigned, as ground for new trial, error of law occurring at the trial, under §2158, cl. 7, Burns 1914, Acts 1905 p. 584, §282, the court on appeal will assume that the trial court ruled on the motion as presented by the record, and, hence, will not treat the assignment as being under clause 1 of such section, since all reasonable presumptions are indulged in favor of the rulings of the trial court. p. 472.
3. CRIMINAL LAW.—*Challenge of Juror.—Ruling.—Not Assignable as Error at "Trial."*—The word "trial," as used in the seventh

clause of §2158 Burns 1914, Acts 1905 p. 584, §282, signifies the proceedings subsequent to the swearing of the jury; hence, the ruling on a challenge of a juror is not assignable under such clause as error occurring at the trial.  p. 472.

4. CRIMINAL LAW.—*Evidence Tending to Show Other Crime.— Limiting Application.—Sufficiency of Instruction.*—In a prosecution of a defendant, who was a city street commissioner, jointly indicted with others for assault and battery, the state's theory being that the crime was committed by the others pursuant to the counsel of, and in conspiracy with, the defendant, an instruction as to pay rolls signed by the defendant which tended to show fraudulent irregularities or violations of the law in connection therewith in making certain payments to other defendants, was not error, where it limited consideration of such evidence to the question of the relationship between the defendant and the persons actually committing the offense, and was so worded that it could be readily understood and properly applied by jurors of ordinary intelligence.  p. 474.

5. CRIMINAL LAW.—*Instruction.—Requests Covered by Others Given.*—There was no error in refusing to give a requested instruction that was fully covered by others given.  p. 478.

6. ASSAULT AND BATTERY.—*Evidence of Motive.—Admissibility.*— In a prosecution of a defendant, indicted jointly with others, for an assault and battery, the state's theory being that the defendant's motive for participation in the crime was due to an impression that the person assaulted was mailing literature to incite religious prejudice against certain candidates, evidence that such person was a deputy fire marshal and had been mailing weekly hundreds of letters in connection with his official duties, when considered with other evidence which brought to the knowledge of the defendant the mailing of letters and on which he based his belief, was admissible.  p. 479.

7. ASSAULT AND BATTERY.—*Motive.—Lack of Ill Feeling of Co-conspirator.—Admissibility.*—In a prosecution of a defendant, jointly indicted with others, for assault and battery, on the theory that he conspired in the offense, testimony of one actually committing the assault that he had no ill feeling toward the prosecuting witness was admissible as a circumstance tending to show an inducement to commit the act other than any personal motive on the part of the witness.  p. 480.

8. CRIMINAL LAW.—*Assault and Battery.—Acts of Conspirators. —Admissibility.*—In a prosecution of a city street commissioner for assault and battery, on the theory that he was connected with a conspiracy pursuant to which the crime was committed, testimony of one actually committing the offense that he made

payments thereafter to a third party, who took the witness in an automobile to and from the scene of the offense, was not objectionable as immaterial and hearsay, it tending to trace fraudulent payments, made through the pay-roll by the defendant to the third party, for which the latter had rendered no services to the city; and it, being a link in the chain of circumstances, and tending to show guilty knowledge and such a connection with the crime as to make it competent as a part of the entire transaction, was not objectionable as against the defendant on the ground that it was a statement or admission of a coconspirator made after the commission of the alleged offense. p. 480.

9. WITNESSES.—*Cross-Examination on Collateral Matter.—Discretion.*—In a prosecution of a city street commissioner, indicted jointly with others, for assault and battery on the theory that the offense was committed pursuant to his counsel, where evidence was introduced by the state tending to show that fraudulent payments were made by the defendant through city pay rolls to his coconspirators, and he as his own witness testified that the pay rolls were not made up by him and that he certified them for payment, supposing them to be correct, the court in permitting cross-examination affecting his knowledge of the truthfulness and correctness of names so certified was not an abuse of discretion, though the evidence was in a sense collateral. p. 481.

10. WITNESSES.—*Cross-Examination.—Collateral Matter.—Contradictory Evidence.—Admissibility.*—Substantive evidence is not admissible to contradict extraneous or collateral matters disclosed by cross-examination, since the only purpose of questions on such matters is to impair the credibility of the witness, and with his answers thereto the interrogating party must be content. p. 482.

11. CRIMINAL LAW.—*Cross-Examination.—Collateral Matters.—Harmless Error.*—Where a witness for the defendant testified on cross-examination as to a conversation had with the prosecuting witness in the absence of the defendant and in which the latter did not figure, but denied that he had stated therein that he had heard of a certain matter, though the matter was collateral, the error in allowing a witness for the prosecution to state on rebuttal that the defendant's witness had said that he heard of such matter, was not prejudicial, where the record affirmatively shows that the cause was fairly tried on the merits and a correct result reached. p. 482.

12. CRIMINAL LAW.—*Verdict.—Evidence.—Weight.*—The Supreme Court will not interfere with a verdict merely because of the

weight of the evidence, since the denial of a motion for a new trial, in which motion such question was raised, forecloses the question on appeal. p. 483.

From Marion Criminal Court (45,836); *Charles E. Henderson,* Special Judge.

Prosecution by the State of Indiana against Dennis J. Bush. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Joseph B. Kealing, Martin M. Hugg, John C. Ruckelshaus, Michael J. Ryan* and *Russell J. Ryan,* for appellant.

*Ele Stansbury,* Attorney-General, *Elmer E. Hastings* and *Alvah J. Rucker,* for the state.

MYERS, C. J.—In the Marion Criminal Court, Dennis Bush, Robert Walters, Otto Jones, Hugh Costello and Dolph Staub were jointly indicted for an assault and battery upon one Ralph E. Richman. Bush requested and was granted a separate trial before a jury, found guilty, and sentenced to pay a fine of $900 and to imprisonment at the Indiana State Farm for four months. The overruling of appellant's motion for a new trial is the only error relied on for a reversal of the judgment.

Appellant first insists that his motion for a new trial should have been sustained for the reason that, as shown by his bills of exceptions, on July 3, 1916, the first day of the July term of the Marion Criminal Court, three persons of the twelve drawn to serve as the regular jury panel for that term were absent, whereupon the court made an order, duly entered of record, commanding the sheriff of Marion county to summon three persons to serve as petit jurors for that term of court. On July 10, 1916, the sheriff of

Marion county, in obedience to such order, summoned Fred Sturm, Charles Kuhler and John Steinmetz, and accordingly made his return. Pursuant to the court's order, the names of the three persons so summoned were entered upon the records of the court as members of the regular panel for the July term.

On October 24, 1916, and at the July term, appellant's case was called for trial. It appears from the *voir dire* examination of the three persons named that each of them had not served as jurors within a year, except in certain cases theretofore tried at that term of the Marion Criminal Court. Appellant challenged each of these persons separately for cause upon the ground that each had served upon a jury within a year and within a period of two months, and that neither of them was a member of the regular panel. The court overruled these challenges, whereupon appellant peremptorily challenged Sturm, Steinmetz and juror Elmer Cooley, thereby exhausting his right to such challenges. He then, and before the jury was sworn to try the cause, renewed his challenge to juror Kuhler for cause upon the grounds heretofore stated. This challenge was overruled, and the jury, with Kuhler as a member thereof, was then sworn to try the cause.

Appellant has assigned as causes for a new trial the rulings of the court on his challenge for cause directed to Sturm and Steinmetz, but, as they

1.    were removed from the jury by peremptory challenge, no harm resulted to appellant on account of these rulings. *Rock* v. *State* (1916), 185 Ind. 51, 110 N. E. 212.

The overruling of appellant's challenge to juror Kuhler is also assigned as a cause in his motion for

a new trial, and is therein stated as "an error of law occurring at the trial." The state makes the point that the trial did not begin until the jury was impaneled and sworn, consequently the alleged error of which appellant complains did not occur at the trial.

Section 2158 Burns 1914, Acts 1905 p. 584, §282, prescribes various causes for which a new trial may be granted. One of the causes thus provided,

2. clause 7, is for "error of law occurring at the trial." The ruling now under consideration, as we have seen, was specifically assigned as a cause for a new trial under clause 7, *supra,* and not under clause 1, as appellant would have us treat it. We must assume that the court below ruled on the motion as presented by the record before us, and for us not to do so would be a violation of a long-settled rule in this jurisdiction that every reasonable presumption should be indulged in favor of the jurisdiction, rulings and regularity of the proceedings of the trial court. *New York, etc., R. Co.* v. *Shields* (1916), 185 Ind. 704, 112 N. E. 762. We would have a different proposition if this ruling had been brought under clause 1, *supra.* *Collett* v. *State* (1901), 156 Ind. 64, 59 N. E. 168.

Hence the question, Was the claimed error one occurring at the trial? This question will be answered by determining at what point in the proceed-

3. ings the trial began. Our Criminal Code, §2136 Burns 1914, Acts 1905 p. 584, §260, provides that, "The jury being impaneled and sworn, the trial shall proceed in the following order." The order is then stated. But this order does not include any of the proceedings of the court prior to the swearing of the jury.

A plea of guilty on arraignment is not a trial in the sense that an error of law occurring at the trial may be presented by a motion for a new trial. *Trattner* v. *State* (1916), 185 Ind. 188, 113 N. E. 243; *Corwin* v. *Thomas* (1882), 83 Ind. 110. Nor can a defendant in a criminal prosecution plead former jeopardy as a defense to a further prosecution for the same offense, unless in a court of competent jurisdiction he has been arraigned and pleaded, or has waived an arraignment, a jury has been impaneled and sworn to try the cause presented by a legal indictment. *Gillespie* v. *State* (1907), 168 Ind. 298, 80 N. E. 829; *Morgan* v. *State* (1859), 13 Ind. 215.

The definition of the word "trial" as used in §2158, clause 7, *supra,* and the cause relied on by appellant, is correctly defined in Bouvier's Law Dictionary as: "The examination before a competent tribunal, according to the laws of the land, of the facts put in issue in a cause, for the purpose of determining such issue." And as said by Webster: "In criminal law the term 'trial' is, however, generally restricted to proceedings subsequent to swearing in the jury." In Words and Phrases, numerous authorities are cited in support of the statement that "In a criminal cause the term 'trial' does not include the arraignment, or any other merely preparatory proceeding which may be taken prior to the time of administering the requisite oath to the jury." 8 Words and Phrases 7099. In *Hunnel* v. *State* (1882), 86 Ind. 431, 434, this court held that a trial in a criminal case does not begin until the panel is completed and the jury sworn. See also *Jenks* v. *State* (1872), 39 Ind. 1; *Orear* v. *State* (1899), 22 Ind. App. 553, 556, 53 N. E. 249; *Lindley* v. *Kemp* (1906), 38 Ind. App. 355, 76 N. E. 798; *Com-*

*monwealth* v. *Soderquest* (1903), 183 Mass. 199, 66
N. E. 801; *State* v. *Kent* (1896), 5 N. D. 516, 67 N. W.
958, 35 L. R. A. 518, 524.   The inference to be drawn
from the foregoing citations leads us to conclude that
by the forms of our law the various steps in a criminal
case prior to the swearing of the jury must be re-
garded as preparatory to the trial.  In the instant
case the claimed erroneous ruling occurred before the
jury was impaneled and sworn.   Therefore under the
authorities cited the ruling in question is not before
this court for review as an error of law occurring at
the trial.

Appellant next insists that the court erred in giv-
ing to the jury on its own motion instruction No. 7.

At the time the assault and battery was committed
on Richman, appellant was street commissioner for
the city of Indianapolis.   As such officer he
4.   certified to the board of works the correctness
of the pay-rolls for street improvements.   The
city council fixed the wages of all persons thus en-
gaged, and appellant employed the men and assigned
them to the foreman having charge of such work.   The
pay-rolls were made up from time sheets.   Certain of
these pay-rolls, issued before and after the crime was
committed, were introduced in evidence, which, to-
gether with other evidence, tended strongly to prove
irregularities or violations of law in connection there-
with.

By the questioned instruction, briefly stated, the
court expressly told the jury that any irregularities
or violations of law in connection with these pay-rolls,
or in appellant's management of his office, would not
alone warrant the jury in finding appellant guilty of
the charge under consideration, and that they should

not consider the pay-rolls or payments issued or made before or after the crime was committed for any purpose other than as tending to show the relationship between appellant and others jointly indicted with him prior to and after the commission of the offense, as well as whether or not by such means appellant sought to keep quiet those engaged in the alleged offense, or as pay to them, or either of them, as a reward for the unlawful act.

The objections urged against this instruction are: That it is vague, uncertain and confusing; that it was error to tell the jury that the pay-roll evidence by itself would not warrant a conviction, without in the same connection advising it what evidence would be required to convict; that a fair inference to be drawn from the instruction is that, while the city pay-rolls introduced in evidence tended to show violations of the law and alone would not sustain a conviction, yet when supplemented with other evidence they would be sufficient; that the instruction had the effect of diverting the minds of the jurors from the issue to that of speculation and conjecture.

The record discloses an abundance of evidence tending to show that appellant was under the impression that the prosecuting witness was sending out literature regarding various candidates on the Democratic state ticket tending to incite a religious prejudice by the voters against such candidates. For the purpose of stopping this supposed war on such candidates, he called Walters in counsel, whom he knew to be a fearless and dangerous person, with a view to having him organize a gang to "beat up" and administer to Richman rough treatment as well as to obtain the literature which Richman was supposed to possess. Wal-

ters, in effect, says that immediately after the interview between him and appellant, and as requested by appellant, he undertook to interest others to assist him in accomplishing the object desired by appellant. He secured Jones and Costello as his assistants, and Staub to drive the automobile, which was to take them to the Richman home at 3764 Ruckle street, Indianapolis. The evidence tends to show that appellant borrowed the automobile, took the license numbers off, turned it over to Walters, with the remark, "Go ahead out there and do a good job." Walters, Jones and Costello, with Staub as driver of the automobile, proceeded to the vicinity of Richman's home, and for hours shadowed that home, watching for him to come upon the street where they might have an opportunity of attacking him and, in their language, "Hang an eye on him." Further Walters testified that Richman failed to appear on the street, and between seven and eight o'clock in the evening, Sunday, September 20, 1914, Jones, Costello and himself, as requested by appellant in case their victim did not appear on the street, went to the house of Richman, obtained admission, and requested that he deliver to them certain literature, which Richman denied having. After knocking him down and kicking him, they then ran out of the house and across a common to Central avenue, where the automobile in charge of Staub was in waiting. They jumped into the machine and in a roundabout way drove back to the business portion of the city and left the machine in the alley back of the city hall, where they were told by appellant to leave it. That night Staub was arrested. There is evidence tending to show that appellant did not know Staub on and prior to the day of the assault, but on

the next morning we find him in the city judge's office very active in having the bond of Staub reduced, and saying to the city judge that he knew Staub, and that it was all right to let him go on his own recognizance, and that Staub would be in court. Staub was released from jail on his own recognizance, but later, on the order of the city judge, he was rearrested and his bond again placed at $1,000. A few days after Staub was released it appears that appellant met him with the remark, "Well, how are you getting along, Stibby?" The answer was, "I am still sitting tight in the boat." Staub then approached appellant for some money, or that he be placed on the pay-roll, when appellant said he thought he could fix him up. It appears that appellant gave Walters money for Staub and a promise to put him on the pay-roll. Later he gave Walters a city check payable to Joe Stark, which he said was for Staub, and this check was turned over to him. Walters was on the pay-roll for about a year, and admits that he did but one day's work. In October, after the assault on Richman, Walters testified that, at the request of Bush, he left Indianapolis for about four weeks, and while away he received several city pay-roll checks from the street commissioner's office and cashed them. The names of each of the parties directly connected with the brutal attack, and not on the pay-roll at that time, are shown to have received money either directly or under fictitious names on account of the street commissioner's department.

The evidence in this case is quite voluminous and it will serve no good purpose for us to here give a more extended review of it. We have referred to the evidence in a general way and briefly, but sufficiently, we think, to indicate a justification for the questioned

instruction. It pertained solely to the pay-roll evidence. It limited the application of this evidence and explained the purpose for which it was admitted. A juror of ordinary intelligence would readily understand and properly apply it. The error, if any, pointed out in this instruction is technical and is made to appear only by strict construction. As we are advised, the objections of appellant are not well taken. *Shields* v. *State* (1897), 149 Ind. 395, 406, 49 N. E. 351.

It must be kept in mind that appellant was prosecuted upon the theory that he incited, instigated and counseled others to commit the offense charged, and that it was committed in pursuance of such counsel, and not that appellant did, in fact, commit the offense. The instructions as a whole presented the issue and the evidence to the jury as favorably to appellant as he could reasonably ask. *American Car, etc., Co.* v. *Adams* (1912), 178 Ind. 607, 99 N. E. 993.

Appellant requested a number of instructions which the court refused, and this ruling of the court as to instructions Nos. 2 and 7 he insists was clearly erroneous. The purpose of refused instruction No. 2 was to inform the jury that it could not consider the declarations of one coconspirator in the absence of the other for the purpose of establishing the conspiracy. That proposition was fully covered by instruction No. 6, given by the court on its own motion, and was a much clearer statement of the law as applied to the evidence in this case.

Tendered instruction No. 7 was not objectionable, but, as it was fully covered by instruction 5. given, there was no error in refusing it. *State* v. *Jackson* (1918), 187 Ind. 694, 121 N. E. 114. Appellant also claims many errors in the admission

and rejection of evidence. We shall not take the space required to discuss separately the various rulings along this line which appellant has brought to our attention. Those of which appellant seems to be the most insistent we shall consider specially.

The prosecuting witness, after testifying that at the time of the assault he was a deputy state fire marshal, and also a member of the state fire prevention association, was permitted to testify over appellant's objection that, for four months prior to September 20, he prepared at his home and mailed from 100 to 150 letters in large envelopes every week to members of that association, and to property owners whose property had been inspected by its members. As stated by appellant, this testimony would seem to be outside the issue, but when it is considered in connection with other evidence tending to show that the mailing of these letters was the fact which led to the suspicion that he was mailing literature to voters calculated to stir up a religious prejudice against certain candidates for office, and to stop which appears to have been the sole motive for the assault, we deem it not improper that he be allowed to state the facts concerning his acts which brought on the assault. Moreover, the fact that he was engaged in sending out each week the number of letters stated was a circumstance which the jury had a right to consider along with other evidence which brought to the knowledge of appellant such fact and on which he relied for his belief. Also under the theory of the state, it tended to prove the issue. Wharton, Criminal Evidence (10th ed.) §24.

Over the objection of appellant, Walters was permitted to testify that he had no hatred or ill feeling

toward the prosecuting witness at the time of
7.   the assault.  From the evidence it appears that
Walters had no acquaintance with Richman and
never met him until the night the assault and battery
was committed.  The only conversation he ever had
with Richman was that night when he accused him of
sending out certain literature and demanded that it
be turned over to him.  The evidence was admissible
as a circumstance, along with other evidence, tend-
ing to show an inducement to commit the crime, other
than any personal motive of his own.  On cross-exami-
nation he was not allowed to answer that he did the
act in cold blood.  This question, however answered,
would not have added anything to the proof already
showing conclusively that fact.

Over the objection of appellant, Staub was permit-
ted to testify that he had received money several
times from Walters after the assault on Rich-
8.   man.  This testimony standing alone would
seem to be objectionable, but when considered
with other evidence in the case, it was not objection-
able as being immaterial and hearsay.  It tended to
trace certain payments covered by certain pay-rolls
into the hands of Staub, who, as we have seen, had
performed no service to the city for which he was
entitled to pay.  It tended to show facts naturally to
be expected to follow such lawless activities, and to
corroborate Walters and Staub.  Its purpose was a
supportive link—subsidized protection—in the chain
of circumstances, beginning at the time it is claimed he
incited the assault, tending to show guilty knowledge,
and is so interwoven with other evidence connecting
him with the crime as to make it competent as a part
of the whole transaction.  *Musser* v. *State* (1901), 157

Ind. 423, 436, 61 N. E. 1. The question as to the admission of this evidence, according to the record before us, is not ruled by the principle that: "Statements or admissions of coconspirators subsequent to the commission of an offense at a time when the conspiracy is ended or the offense committed for which the conspiracy was formed are not admissible against the defendant on trial." *Kohn* v. *State* (1914), 182 Ind. 1, 5, 105 N. E. 385.

Appellant was a witness in his own behalf, and, on cross-examination and over his objection, he was required to answer certain questions tending to affect his knowledge as to the truthfulness and correctness of the names, certified by him to the board of works, entitled to pay for services rendered the city in his department. It was the signature of appellant certifying the pay-rolls of the street department to the board of works that made them effective for allowance by the board. Appellant in his original examination denied any knowledge of fictitious names so claimed to have been certified by him, and explained to the jury that these pay-rolls were made up by others than himself, and, supposing that they were correct, he made the certificate.

9.

While the particular cross-examination in a sense was with reference to collateral matters, yet, in view of the liberal rule confiding the extent of such examinations to the sound discretion of the trial court, we are not convinced that this discretion in this instance was abused, and reversible error is not shown. *Eacock* v. *State* (1907), 169 Ind. 488, 82 N. E. 1039; *Parker* v. *State* (1894), 136 Ind. 284, 35 N. E. 1105; *Henderson* v. *Henderson* (1906), 165 Ind. 666, 75 N. E. 269.

The prosecuting witness on rebuttal, and over ap-

pellant's objection, was permitted to state that Mayor Bell said to him, two or three days after the assault, that he had heard some two weeks before the assault that a deputy fire marshal was distributing certain literature. Bush was not present at this conversation. Bell was a witness for the defense, but this subject was not mentioned in his examination in chief. It was brought out on cross-examination wherein he admitted having had a conversation with Richman or his father shortly after the assault, but positively denied saying that he had heard some two weeks before the assault that a deputy state fire marshal was distributing certain literature, or in substance made any such statement.

It is settled law that substantive evidence will not be admitted to contradict extraneous or collateral matters brought out on cross-examination, for 10. the reason that such questions are permitted only for the purpose of impairing the credibility of the witness, and with his answers the interrogating party must be content. *Dunn* v. *State* (1904), 162 Ind. 174, 182, 70 N. E. 521; *Hinkle* v. *State* (1901), 157 Ind. 237, 61 N. E. 196; *Miller* v. *State* (1910), 174 Ind. 255, 91 N. E. 930. However, if the matter be so entirely irrelevant that it cannot influence the result, the error will not be available. *Talburt* v. *Berkshire Life Ins. Co.* (1881), 80 Ind. 434.

We have followed carefully appellant's reasons and argument supporting his contention that the challenged testimony pertained to a collateral matter and was not proper rebuttal. If appellant's 11. claim in this particular be conceded, the matter was so entirely foreign to the issue, and affirmatively so shown by the record, that no harm could have re-

sulted therefrom to appellant. The dispute between the two witnesses as to what was said upon a certain occasion and in which appellant nowise figured, and the record affirmatively showing that the cause was fairly tried on its merits and a correct result reached, will not be disturbed by an intervening error clearly not prejudicial to any substantial right of appellant. *Osburn* v. *State* (1905), 164 Ind. 262, 276, 73 N. E. 601; *Sanderson* v. *State* (1907), 169 Ind. 301, 315, 82 N. E. 525; *Binns* v. *State* (1879), 66 Ind. 428, 430; *Campbell* v. *State* (1898), 150 Ind. 74, 85, 49 N. E. 905.

The jury was not favored with the evidence of Jones or Costello. The inference to be drawn from the evidence in the record is that neither of these parties were within the state at the time of the trial. Mention is made of Jones in Michigan and Costello in Texas.

We have carefully considered each question relied on by appellant for reversal of the judgment. We have read the evidence disclosed by the record, and in our opinion the evidence clearly justified a conviction. In the case of *Stalcup* v. *State* (1896), 146 Ind. 270, 275, 45 N. E. 334, it is said: "In cases where it is manifest that a fair and impartial trial has been had, and that the judgment is just on the merits, the court, as required also by the statute, will disregard errors which have not prejudiced the substantial rights of the defendant, and will suffer the judgment to stand." Appellant asserts in substance that none of the state's witnesses who gave such damaging evidence, and whose evidence, no doubt, had much to do with appellant's conviction, were worthy of belief. However this may be, it is sufficient to say that the jury was the final arbitrator in determining

the weight and value of this evidence. Counsel for appellant say, and we do not here question the truth of their statement, that appellant is a good citizen of the city of Indianapolis, but it does appear that he was in close touch and on very friendly terms with his alleged coconspiraors, Walters and Staub, whose admitted records as law violators brand them as persons who would willingly engage in a brutal assault such as was committed on Richman for a small consideration and promise of protection. If appellant purposed the act which Walters and his assistants committed, and which they say was counseled and advised by him, and as the jury found, naturally Walters would be the type of citizen who could be depended upon to successfully execute the plans of the conspirators. The motion for a new trial brought the evidence in this case before the trial court for review. The verdict of the jury sustained by sufficient evidence, and the court's ruling on the motion for a new trial under the settled law of this state, foreclosed this court's right to interfere with the judgment for want of evidence.

Judgment affirmed.

Lairy, J., dissents.