**Reynaldo Ortiz MARTINEZ, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–782A148.**

Court of Appeals of Indiana, Third District.

May 23, 1983.

The record discloses that Martinez is a young man of Puerto Rican descent. He was represented by the public defender in this proceeding. His attorney was unable to converse with him in Spanish and during their conferences prior to trial other inmates were sometimes used as interpreters. Martinez' appellate counsel asserts that when Martinez was arraigned she was present in the courtroom and, in fact, translated the contents of the charging information to him. It does not appear, however, that she did so either at the direction of or with the knowledge of the trial court. In fact, the order book discloses that Martinez waived formal arraignment and entered a plea of not guilty.

Approximately two weeks prior to trial a request was made by defense counsel for the appointment of an interpreter to serve at the trial. Nevertheless, no interpreter was present on February 22 when the jury was picked. After the jury was selected Martinez, his attorney and two attorneys for a co-defendant met in the conference room. A heated discussion followed. Martinez was quite upset because no one had been present to translate for him.

The next day before the reception of evidence commenced Martinez' counsel requested permission to withdraw. This motion was denied, but the question of an interpreter was also discussed. The state argued at that time that Martinez was sufficiently proficient in English that an interpreter was unnecessary.[1] When the court questioned Martinez directly, he replied that he could not defend himself in a courtroom in English. The court did not conduct an evidentiary hearing on the question. Instead it appointed Mr. Gomez to serve as interpreter throughout the remainder of the trial. Mr. Gomez then read to the court a letter, at Martinez' request, in which Martinez expressed distrust of counsel largely

Itsia Doris Rivera, Rivera, Schlesinger & de la Torre, East Chicago, for defendant-appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Reynoldo Martinez was tried by jury and was found guilty of possession of a narcotic drug, a Class D felony. The principal contention raised by his appeal is that he was denied his constitutional rights through the failure of the court to provide him with an interpreter at all stages of the proceedings.

---

1. The only evidentiary support for this assertion came during the trial. Officer Lawson testified that he and Martinez spent 45 to 55 minutes together at a restaurant at the time of the offense. The officer testified, "Well, I had no problem understanding him. I didn't see any problem in understanding him at all. It was broken, but no problem." There was no evidence adduced addressing Martinez' ability to understand the officer, either as to breadth of vocabulary or in the speed of delivery. Needless to say, such factors are significant to Martinez' understanding of what was occurring during trial.

because of their inability to communicate. Mr. Gomez served as interpreter throughout the remainder of the trial and there is no assertion that he failed in any respect to discharge his duties.

Because the law on the subject is sparse we deem it worthwhile to briefly summarize the applicable rules.

At the time of trial IC 35-1-8-2 provided:

"(a) Every person who cannot speak or understand the English language or who because of hearing, speaking or other impairment has difficulty in communicating with other persons, and who is a defendant in any criminal action or a witness therein, shall be entitled to an interpreter to aid such person throughout the proceeding.

(b) Such an interpreter may be retained by such party or witness himself, or may be appointed by the court before which the action is pending. If an interpreter is appointed by the court, the fee for the services of the interpreter shall be set by the court and shall be paid in such manner as the court may determine, except that an acquitted defendant shall not be required to pay any fee for the services of a court-appointed interpreter."

Although this statute has been since repealed, because of its very generality and because of the strong constitutional implications to criminal defendants, no substantial change in the law was effected by the repealer.

The decided cases have recognized that a defendant's right to confront his accusers, to cross examine witnesses and to the assistance of competent counsel are all jeopardized if he cannot understand the language of the court, witnesses and counsel. *U.S. ex rel. Negron v. State of New York* (2nd Cir.1970), 434 F.2d 386; *State v. Natividad* (1974), 111 Ariz. 191, 526 P.2d 730. Furthermore, however, it would be fundamentally unfair within the meaning of the fourteenth amendment to subject to trial and conviction one who had no comprehension of what was occurring. From the state's viewpoint it would be no more than an

"invective against an insensible object" (*Natividad, supra*) and from the accused's "a babble of voices" (*Negron, supra*) or "the Kafkaesque spectre of an incomprehensible ritual which may terminate in punishment." (*United States v. Carrion* (1st Cir.1973), 488 F.2d 12, *cert. den.* 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112.)

Where the accused possesses some understanding and ability to communicate in English, the decisions recognize that the trial court is granted discretion concerning the need for and use of an interpreter. *Carrion, supra; Natividad, supra.* Yet both these cases point out that precisely *because* the trial court is granted broad discretion, it should make unmistakably clear to the accused who may have a language difficulty that he has a right to an interpreter if the court determines that one is needed. In addition, whenever put on notice that there may be some significant language difficulty the court should *sua sponte* make such a determination of need. *Carrion, supra.* From this it follows that courts have accepted the rationale of *Johnson v. Zerbst* (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 in determining whether or not an accused may be determined to have waived these rights. We consider these cases to properly reflect the law of this state as well.

As is readily apparent, however, the facts attending Martinez' appeal do not fall upon the bright side of either line.

We initially point out that no allegations of specific actual prejudice to Martinez in the form of missing witnesses, surprise testimony, prejudiced jurors, etc. have been urged. The appeal, instead, depends upon whatever prejudice we may find inherent in the course of the proceedings.

Secondly, there is no assertion of any continuance of the problem once Mr. Gomez was appointed at the commencement of the trial itself.

Martinez contends it was error not to have provided him with an interpreter throughout the pretrial stage of the proceedings. He asserts that as a result he

was also denied effective assistance of counsel.

■ We cannot agree that the record discloses that the court was put on notice of Martinez' language difficulty at the time of arraignment. As previously noted the record discloses only a waiver of formal arraignment and entry of a not guilty plea. There was no express assertion of any language disability. While we do not doubt counsel's assertion that she translated the charging information to Martinez, nothing indicates that the court was aware of her action or of a language difficulty. Under these circumstances we cannot say the court erred by failing to inquire concerning the need for an interpreter.

Martinez also contends that he was denied effective assistance of counsel. It is not really argued that Martinez and his counsel were unable to communicate, and from the record it appears that they could through third persons available to translate where necessary. Furthermore, it appears that counsel did request an interpreter for trial.

■ Martinez argues instead that the error occurred because his right to communicate confidentially with his attorney was violated when other inmates acted as interpreter in his conferences with his attorney. We reject this argument. It transposes one objection for another. It appears that Martinez was not denied effective counsel on the grounds that the two were unable to confer prior to trial. While the oath of a duly appointed interpreter would no doubt further the protection of confidentiality, the record before us is barren of any intimation that the communications between Martinez and his attorney were not kept confidential beyond the knowledge acquired by the interpreter himself. We find no cause for reversal in this allegation.

Thus, the remaining question concerns the absence of any interpreter on the day the jury was impaneled.

While impaneling the jury is not a part of the trial within the contemplation of IC 35–37–2–2, *Bush v. State* (1920), 189 Ind.

467, 128 N.E. 443, there can be no doubt that it is a critical stage of the proceedings. *See, e.g., Winston v. State* (1975), 263 Ind. 8, 323 N.E.2d 228. Moreover, it is formal beginning of the panoply about to occur. We recognize that in practice its conduct is largely committed to the discretion of counsel who, of course, had no language barrier as to what occurred. From the record and argument we may presume that counsel performed adequately, and we must recall that Martinez was entitled to a fair and impartial jury, not a favorable one.

■ Nevertheless we feel compelled to conclude the error was reversible. That the court decided the next day to appoint an interpreter demonstrates the court's conclusion that there was a language disability. When no interpreter was present for voir dire both Martinez' right to the assistance of counsel and his right to be meaningfully present at every stage of the proceedings were placed in jeopardy.

■ That he had a right to consult with counsel at this stage of the proceeding cannot be challenged. *See Cade v. State* (1976), 264 Ind. 569, 348 N.E.2d 394, 398, *reh. den.* 265 Ind. 144, 352 N.E.2d 473. Nor is it open to question that he had the right to be present. *See Cape v. State* (1980), Ind., 400 N.E.2d 161. While such right to presence may be waived, the waiver should be express, *Cape, supra,* and expressly authorized by the accused. *Miles v. State* (1944), 222 Ind. 312, 53 N.E.2d 779.

We believe, as did the court in *Natividad, supra* that waiver may not be presumed for Martinez' failure to make objection in court to proceeding with the voir dire.

■ While it remains arguable that Martinez was not substantially harmed since he understood some English and his counsel did voir dire the jury, we think the same cannot be said for preserving the integrity of our judicial system. Our courts have already noted that we should be concerned with providing not only justice, but with satisfying the appearance of justice. *Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 465, 91 S.Ct. 499, 504, 27 L.Ed.2d 532. *See*

also Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. *Faretta* also reminds us that it is the *defendant's* defense that is guaranteed, not that of his attorney.

Admittedly under the circumstances the question is close. Yet if we are to err, we choose to do so in favor of the individual and his right to understand and participate fully in the proceedings which may result in the deprivation of his liberty.

We conclude it was error to deny the assistance of an interpreter during the jury selection process. The judgment is therefore reversed and a new trial ordered.

Reversed.

HOFFMAN, P.J., and STATON, J., concur.